**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| KIMBERLY EARLE,<br>     Plaintiff<br><br>     v.<br><br>JAY CLAYTON, *et al.*,<br>     Defendants | Civil Action No. 19-1419 (CKK) |

**MEMORANDUM OPINION**
(January 8, 2020)

Plaintiff was employed by the United States Securities and Exchange Commission ("SEC") from 1990 until her termination on September 18, 2018. Plaintiff disputes the circumstances surrounding her termination, which was preceded by an unacceptable performance rating, placement on a Performance Improvement Plan ("PIP"), and an offer for her to be demoted or to resign. Based on these events, in her Amended Complaint, Plaintiff brings eight claims against a myriad of SEC employees in their official and personal capacities. In Count One, Plaintiff alleges that Defendants violated her constitutional rights by improperly terminating her without due process. In Count Two, Plaintiff alleges that Defendants violated RICO, 18 U.S.C. § 1962(c), by engaging in a criminal enterprise involving false statements to federal officials, mail fraud, and extortion in order to obtain her property interest in her federal employment. In Count Three, Plaintiff alleges that Defendants violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, by discriminating against her on the basis of gender. In Count Four, Plaintiff alleges that Defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, by discriminating against her on the basis of age. In Count Five, Plaintiff alleges that Defendants violated Title VII by discriminating against her on the

basis of religion. In Count Seven[1], Plaintiff alleges that Defendants violated Title VII by subjecting her to a hostile work environment. In Count Eight, Plaintiff alleges that Defendants violated Title VII by retaliating against her for engaging in protected activity. And, in Count Nine, Plaintiff alleges that Defendants violated Title VII by retaliating against her for making a whistleblower complaint. Defendants have moved for a partial dismissal of Plaintiff's Amended Complaint.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court will GRANT Defendants' Partial Motion to Dismiss. First, Plaintiff has voluntarily agreed to DISMISS her Count Seven hostile work environment claim and her Count Nine whistleblower claim. Next, the Court concludes that Plaintiff's Count One *Bivens* claim and Count Two RICO claim are DISMISSED as precluded by the Civil Service Reform Act ("CSRA") and Title VII and for failing to state a claim for which relief may be granted. Furthermore, the Court finds that Plaintiff's Counts Three, Four, and Five claims for Title VII and ADEA discrimination may proceed only as to Plaintiff's termination, as that is the only cognizable adverse employment action, and only as to Defendant Clayton in his official capacity, as he is the only proper Defendant. Finally, the Court similarly finds that Plaintiff's Count Eight retaliation claim may proceed only as to Plaintiff's termination, as that is the only employment

---

[1] Plaintiff fails to allege a Count Six in her Amended Complaint.

[2] The Court's consideration has focused on the following documents:
- Defs.' Mem. of Law in Support of Defs.' Mot. for Partial Dismissal and for a More Definite Statement ("Defs.' Mot."), ECF No. 22-1;
- Pl.'s Mem. of Points and Authorities in Opp'n to Defs.' Mot. for Partial Dismissal and Mot. for More Definite Statement ("Pl.'s Opp'n"), ECF No. 23; and
- Defs.' Reply in Further Support of Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 24.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

action causally connected to a protected activity, and only as to Defendant Clayton in his official capacity, as he is the only proper Defendant. Because Plaintiff's claims and the Defendants against whom those claims are made have been altered by this Memorandum Opinion, the Court further ORDERS Plaintiff to file a Second Amended Complaint, containing only the relevant allegations.

## I. BACKGROUND

For the purposes of the Motion before the Court, the Court accepts as true the well-pled allegations in Plaintiff's Amended Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Plaintiff began working for the SEC in 1990. Am. Compl., ECF No. 17, ¶ 79. During the relevant time period, Plaintiff worked for the SEC's Division of Economic and Risk Analysis ("DERA") at a SK-16 pay grade. *Id.* at ¶ 80. Beginning in 2015 and through the relevant period, Defendant Robert Willis was Plaintiff's first line supervisor. *Id.* at ¶¶ 87-88.

Plaintiff alleges that during fiscal year 2017, Plaintiff's supervisors, including Defendant Willis, Defendant Scott Bauguess, the former deputy director of the DERA, and Defendant Kim Coronel, a managing executive at the DERA, planned to create new managerial positions at the DERA, including a new senior officer position. *Id.* at ¶¶ 99-102. The new senior officer position was to be constructed from vacant positions in the DERA which would be repurposed. *Id.* at ¶ 103. However, at that time, there were no vacant positions. *Id.* at ¶ 105.

At the end of fiscal year 2017, Plaintiff alleges that there were insufficient vacant positions to construct the new senior official position. I*d.* at ¶ 110. Plaintiff alleges that in order to create the position, one or more employees would have had to vacate their positions. *Id.* at ¶

111. And, the higher the grade level of the vacant position, the fewer vacant positions would be required to create the new senior official position. *Id.* at ¶ 112. As a SK-16, Plaintiff was at the highest non-managerial level in the DERA. *Id.* at ¶ 114. Plaintiff alleges that there were three other SK-16s. But, she was the only Jewish person, the only female, and had the most years' experience. *Id.* at ¶ 115.

On October 17, 2017, after fiscal year 2017 had ended, Defendant Willis asked Plaintiff to develop policy objectives for the DERA. *Id.* at ¶ 108. Plaintiff alleges that she responded that she would complete the policy objectives after completing more pressing work. *Id.* at ¶ 109.

On November 8, 2017, Plaintiff contends that Defendant Willis told her that she had not provided him with timely policy objectives, that her performance for the fiscal year 2017 was unacceptable, and that she would be placed on a PIP. *Id.* at ¶ 120. Willis instructed Plaintiff to speak to Defendant Iris Rossiter, an attorney in the SEC's Office of General Counsel, about her performance rating and her PIP. *Id.* at ¶¶ 120, 126. Plaintiff informed her union representative of the evaluation but did not speak with Defendant Rossiter. *Id.* at ¶ 125.

Plaintiff had no more communication concerning her performance rating or her PIP until January 17, 2018. *Id.* at ¶¶ 129-134. On that date, Plaintiff alleges that she received an email from the SEC's union indicating that Plaintiff would receive a poor written performance appraisal if she did not resign or accept a demotion. *Id.* at ¶¶ 135-39. On January 23, 2018, Plaintiff filed an initial claim with the SEC's Office of Equal Employment Opportunity ("OEEO") concerning these events. *Id.* at ¶ 23.

On February 20, 2018, Plaintiff was officially served with the PIP which lasted from February 21, 2018 through May 21, 2018. *Id.* at ¶¶ 147, 151. Plaintiff's supervisors ultimately determined that Plaintiff failed the PIP and provided her with a Notice of Proposed Removal on

July 30, 2018. *Id.* at ¶ 175. Plaintiff, represented by counsel, submitted oral and written responses to the Notice in August of 2018. *Id.* at ¶¶ 177-78. The SEC removed Plaintiff from her employment on September 18, 2018. *Id.* at ¶ 183.

Plaintiff alleges that she was terminated pursuant to a fraudulent employee removal method which is used by the SEC. Pursuant to this removal method, an SEC manager gives the targeted SEC employee a fraudulent annual performance appraisal showing unacceptable performance. Then, the SEC's Office of General Counsel attorney extorts the employee in order to induce a resignation or face termination. *Id.* at ¶¶ 60-61. In Plaintiff's case, she alleges that this removal method was used to terminate her position in order to make room for the new senior executive position. Plaintiff contends that she was targeted and terminated due to her gender, age, religion, and in retaliation for protected activity.

On May 15, 2019, Plaintiff filed this lawsuit alleging a multitude of claims against a myriad of Defendants. Compl., ECF No. 1. Defendants filed an initial partial Motion to Dismiss. First Mot. to Dismiss in Part, ECF No. 14. Rather than responding to the Motion, Plaintiff moved for leave to file an Amended Complaint, which was granted. On September 20, 2019, Plaintiff filed an Amended Complaint. ECF No. 17. And, on October 21, 2019, Defendants again filed a Motion for Partial Dismissal and for a More Definite Statement. ECF No. 22. That Motion is currently pending before the Court.

The claims in Plaintiff's Amended Complaint are numbered to Count 9; but, because there is no Count Six, Plaintiff makes only eight claims.

- Count One- Plaintiff alleges that Defendants violated her Fifth Amendment property and liberty rights by terminating her without due process;

- Count Two- Plaintiff alleges that Defendants violated RICO by engaging in a criminal enterprise to make false statements, commit mail fraud, and commit extortion to obtain Plaintiff's property interest in her employment position;

• Count Three- Plaintiff alleges that Defendants violated Title VII by discriminating against her based on her gender;

• Count Four- Plaintiff alleges that Defendants violated the ADEA by discriminating against her based on her age;

• Count Five- Plaintiff alleges that Defendants violated Title VII by discriminating against her based on her religion;

• Count Seven- Plaintiff alleges that Defendants violated Title VII by creating a hostile work environment;

• Count Eight- Plaintiff alleges that Defendants violated Title VII by retaliating against her for engaging in protected activity; and

• Count Nine- Plaintiff alleges that Defendants violated Title VII by retaliating against her for filing a whistleblower complaint.

Am. Compl., ECF No. 17, ¶¶ 185-251. Defendants move to dismiss, at least in part, each claim.

## II. LEGAL STANDARD

Defendants move to partially dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules require that a complaint include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 556, 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).[3]

### III. DISCUSSION

The Court will now address the merits of Defendants' arguments for the partial dismissal of Plaintiff's Amended Complaint. The Court begins by addressing Plaintiff's concessions in her Opposition. The Court then explains why Plaintiff's Count One *Bivens* claim and Count Two RICO claim are precluded by the CSRA and fail to state a claim for which relief may be granted. Next, the Court explains why Plaintiff's Counts Three, Four, and Five claims for Title VII and ADEA discrimination state a claim only as to Plaintiff's termination. Finally, the Court discusses why Plaintiff's Count Eight Title VII retaliation claim also states a claim only as to Plaintiff's termination.

### A. Plaintiff's Concessions for Dismissal

The Court begins by detailing the claims and Defendants that Plaintiff has agreed to dismiss in response to Defendants' Partial Motion to Dismiss.

---

[3] In their Motion, Defendants also state the standard for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. However, it appears that Defendants' arguments for dismissal pursuant to Rule 12(b)(1) apply only to Plaintiff's Count Nine whistleblower claim and to the dismissal of certain Defendants from certain claims, all of which Plaintiff has voluntarily dismissed. Moreover, the Court's Memorandum Opinion does not identify or address any jurisdictional issues. As such, the Court relies only on the standard for dismissal under Rule 12(b)(6).

In response to Defendants' Motion, Plaintiff has agreed to dismiss her Count Seven claim for a hostile work environment as well as her Count Nine claim for retaliation in response to her whistleblower complaint. Pl.'s Opp'n, ECF No. 23, 4. As such, the Counts Seven and Nine of Plaintiff's Amended Complaint are DISMISSED.

Second, Plaintiff has agreed to dismiss all claims against all individual Defendants in their official capacities, except Defendant Jay Clayton. Plaintiff retains her claims against Defendant Jay Clayton in his official capacity as the Chairman of the SEC. *Id.* As such, all claims against Defendants Bauguess, Willis, Coronel, and Rossiter in their official capacities are DISMISSED.

Third, Plaintiff has agreed to dismiss claims against all individual Defendants in their personal capacities from Counts Three, Four, Five, and Eight, for ADEA discrimination and Title VII discrimination and retaliation. These claims will proceed only as against Defendant Clayton in his official capacity as the Chairman of the SEC. *Id.* As such, the SEC[4] and Defendants Clayton, Bauguess, Willis, Coronel, and Rossiter in their personal capacities are DISMISSED from Counts Three, Four, Five, and Eight.

To summarize, Plaintiff proceeds only with the following counts against the following Defendants. Plaintiff is proceeding with her Count One *Bivens* claim and her Count Two RICO claim as against Defendants Clayton, Bauguess, Willis, Coronel, and Rossiter in their personal

---

[4] It is unclear whether or not Plaintiff voluntarily dismissed Defendant SEC from these claims. However, "the only proper defendant in suits brought under [Title VII and the ADEA] is the head of the department or agency being sued." *Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 67 (D.D.C. 2011). Accordingly, these claims are proper only as to Defendant Clayton in his official capacity.

capacities.[5] Plaintiff is further proceeding with her Counts Three, Four, Five, and Eight ADEA discrimination and Title VII discrimination and retaliation claims as against Defendant Clayton in his official capacity as Chairman of the SEC.

## B. Dismissal of Plaintiff's *Bivens* and RICO claims

The Court now turns to Plaintiffs' Count 1 *Bivens* and Count 2 RICO claims. Defendants contend that both claims should be dismissed because they are preempted by the CSRA and Title VII. Additionally, Defendants argue that Plaintiff has failed to state a claim for which relief may be granted. The Court agrees.[6]

Plaintiff alleges that Defendants violated her constitutional rights as well as RICO by employing a prohibited employee-removal mechanism. According to Plaintiff, the removal method has two parts. "First, the SEC manager who wants to have an employee removed assigns that employee an 'unacceptable' performance rating for the year and instructs the employee to see an OGC attorney. Second, the OGC attorney extorts the employee, by making it clear that the employee will 'likely' lose his or her job, but may avoid other negative consequences if he or she 'voluntarily' resigns, waives all rights, and signs a non-disclosure agreement." Pl.'s Opp'n, ECF No. 23, 1. According to Plaintiff's Count One *Bivens* claim, this removal method violated her Fifth Amendment rights by depriving her of her property and liberty interests in her federal

---

[5] In her Opposition, Plaintiff further requested that "the SEC, as an entity, be retained as nominal defendant for purposes of the RICO claim." Pl.'s Opp'n, ECF No. 23, 3 n.3. However, Plaintiff cites no support for retaining the SEC as a nominal Defendant and Plaintiff's allegations do not support naming the SEC as a Defendant for Plaintiff's RICO claim. *See Bloch v. Exec. Office of the Pres.*, 164 F. Supp. 3d 841, 856 (E.D. Va. 2016) (explaining that a "federal agency cannot violate RICO").

[6] The Court notes that Defendants contend that Defendants Clayton, Bauguess, and Rossiter were not properly served in their individual capacities. Plaintiff has failed to respond to this argument. However, because the Court finds that all claims against all Defendants in their personal capacities are dismissed, the Court need not resolve the service issue at this time.

employment without pre-termination or post-termination due process. Am Compl., ECF No. 17, ¶¶ 185-91. And, according to Plaintiff's Count Two RICO claim, this removal method resulted in Defendants engaging in a pattern of racketeering activity, including false statements, mail fraud, and extortion, to defraud SEC employees and obtain their property interests in their employment by means of false or fraudulent pretenses. *Id.* at ¶¶ 192-206.

The Court begins by explaining why Plaintiffs *Bivens* and RICO claims are preempted by the CSRA. The CSRA governs the relationship between the federal government and its employees, providing "a comprehensive system for reviewing personnel action[s] taken against federal employees." *USIA v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). As a result, the CSRA generally "precludes district courts from taking jurisdiction over CSRA-related claims." *Steadman v. Governor, United States Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) (citing *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 533 (1989)). "The CSRA 'regulates virtually every aspect of federal employment and prescribes in great detail the protections and remedies applicable to adverse personnel actions, including the availability of administrative and judicial review.'" *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 63 (D.D.C. 2011) (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) (internal quotations omitted).

### 1. Count One- *Bivens* Claim

First, the Court finds that the comprehensive nature the CSRA's remedial scheme preempts Plaintiff's *Bivens* claim. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court ruled that a plaintiff can pursue a claim against a federal official sued in his or her individual capacity for

constitutional violations. 403 U.S. at 389-90. However, the constitutional cause of action granted in *Bivens* is limited. "[W]hen Congress has declared another remedy equally effective, or when 'special factors counselling hesitation' are present, the judiciary should decline to exercise its discretion in creating damages remedies against federal officials in their individual capacity." *Kittner v. Gates*, 708 F. Supp. 2d 47, 54 (D.D.C. 2010) (quoting *Bivens*, 403 U.S. at 397). For example, in *Bush v. Lucas*, 462 U.S. 367 (1983), the Supreme Court concluded that a federal employee could not make a First Amendment *Bivens* claim for an adverse employment action taken against him because legislation, executive orders, and the Civil Service Commission regulations already established an "elaborate, comprehensive scheme" which counseled against allowing a *Bivens* claim. 462 U.S. at 386-90. In deciding whether to allow a *Bivens* claim, the Court considers not whether the plaintiff would have another avenue for redress, but instead whether an existing "elaborate remedial system … constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." *Id.* at 388; *see also Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (declining to allow a *Bivens* remedy for the improper denial of Social Security benefits, allegedly caused by due process violations, because an elaborate remedial scheme was already in place).

The United States Supreme Court has summarized the availability of *Bivens* remedies as follows:

> In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (internal quotation marks and citations omitted); *see also Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) ("[C]ourts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has not inadvertently omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies.").

In this case, the Court finds that the CSRA is just the sort of alternative existing process for protecting the rights of federal employees which counsels against creating a *Bivens* remedy for the alleged constitutional violation. The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Fausto*, 484 U.S. at 455. Under the CSRA, certain personnel practices are prohibited. These practices include "tak[ing] or fail[ing] to take any … personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(12). One such merit system principle provides that "[a]ll employees … should receive fair and equitable treatment in all aspects of personnel management … with proper regard for their … constitutional rights." 5 U.S.C. § 2301(b)(2).

Given that federal employees' constitutional rights are protected by the CSRA, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has explained that "'special factors' preclude the creation of a *Bivens* remedy for civil service employees … who advance constitutional challenges to federal personnel actions." *Spagnola*, 859 F.2d at 230. These special factors preclude the creation of a *Bivens* remedy even when the CSRA provides "no remedy whatsoever" for a plaintiff's specific alleged constitutional violation. *Id.* at 228 (quoting *Schweiker*, 487 U.S. at 423).

For these reasons, the Court finds that Plaintiff's *Bivens* claim is precluded by the CSRA's comprehensive remedial scheme for federal employees. The CSRA provides remedies for "personnel action[s]" and Plaintiff is challenging personnel actions taken by the SEC. 5 U.S.C. § 2302(a)(2). Specifically, Plaintiff challenges Defendants' alleged violation of her constitutional rights through the use of a prohibited termination method, which, if true, would likely also be prohibited by the CSRA. *See* 5 U.S.C. § 2302(b)(12); 5 U.S.C. § 2301(b)(2) (prohibiting the violation of employees' constitutional rights). As such, the Court concludes that the CSRA's comprehensive remedial scheme is a special factor which counsels against the creation of a *Bivens* remedy in these circumstances. *See Kittner*, 708 F. Supp. 2d at 54-56 (dismissing *Bivens* claim as precluded by the CSRA); *Gerlich v. United States Dep't of Justice*, 659 F. Supp. 2d 1, 8-12 (D.D.C. 2009) (same); *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 235 (D.D.C. 2005) (same); *Sculimbrene v. Reno*, 158 F. Supp. 2d 1, 6-8 (D.D.C. 2001) (same).

Plaintiff contends that her *Bivens* claim is not preempted by the CSRA because, in drafting the CSRA Congress did not "anticipate and intentionally avoid addressing the possibility that federal managers *could* and *would* systematically exploit the statutory and agency-level absence of controls over CSRA's appraisal requirements." Pl.'s Opp'n, ECF No. 23, 19. Essentially, Plaintiff argues that "without a *Bivens* claim in this case to deter individual federal managers from ignoring the CSRA's statutory rule structure, federal agencies and their managerial agents can and will use performance appraisals as pretexts, when desired or needed, to pursue a personal, rather than official, agenda." *Id.* at 21. To summarize, Plaintiff appears to contend that, because the SEC is systematically violating CSRA's requirements on personnel actions, Plaintiff must be allowed to pursue a *Bivens* claim to otherwise enforce the CSRA's requirements.

The Court notes that Plaintiff has failed to cite any case in which any court has allowed a *Bivens* remedy for a personnel action claim similar to Plaintiff's. And, the Court is not persuaded by Plaintiff's argument. The CSRA has its own enforcement mechanism for its requirements. The CSRA "prescribes in great detail the protections and remedies applicable to [personnel actions against federal employees], including the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443; *see also Bush*, 462 U.S. at 385 ("Federal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed."). Plaintiff can challenge her termination through the CSRA's established procedures.

Moreover, even if Plaintiff did lack a remedy under the CSRA for her allegedly unlawful termination, the lack of a remedy would not be determinative. "[C]ase-specific analysis … of the particular statutory remedies available to a claimant" is not required in determining whether or not a *Bivens* claim is precluded by the CSRA. *Spagnola*, 859 F.2d at 227. Instead, the Court considers "whether the design of a statutory scheme evinces an informed congressional judgment that the remedies provided by the scheme are adequate." *Davis v. Billington*, 681 F.3d 377, 387 (D.C. Cir. 2012); *see also Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961 (10th Cir. 1989) ("His position as a federal employee is central to his complaints, and it is this employment relationship that the Supreme Court emphasized …, rather than the nature of the specific violation involved."). "[T]he existence of the comprehensive remedial scheme itself is the relevant consideration, not the availability of particular remedies." *Gerlich*, 659 F. Supp. 2d at 11. Accordingly, even if the CSRA did not provide a remedy for Plaintiff's specifically alleged violation, this lack of a remedy would not entitle Plaintiff a remedy under *Bivens*.

Here, Plaintiff has presented no evidence that she is unable to challenge her performance appraisal, her placement on a PIP, or her termination pursuant to the CSRA. And, there is no indication that Congress inadvertently omitted remedies for Plaintiff's class of injuries. Instead, Plaintiff seems to imply that the CSRA's remedial scheme provides inadequate protection for Defendants' use of the alleged prohibited termination method. However, it is not for this Court to decide that Congress' remedies are inadequate and create a new, "better" remedy pursuant to *Bivens*. *See Bush*, 462 U.S. at 390 (declining to create a *Bivens* remedy because the CSRA precluded relief and "Congress is in a better position to decide whether or not the public interest would be served by creating" a new remedy).

In summary, the Court finds that Plaintiff's *Bivens* claim is precluded by the CSRA which has created "a comprehensive scheme for reviewing personnel action[s] taken against federal employees." *Krc*, 989 F.2d at 1217 (quoting *Fausto*, 484 U.S. at 455). Because Plaintiff's *Bivens* claim is precluded by the CSRA, the Court DIMISSES Plaintiff's Count One *Bivens* claim.

Even if Plaintiff's Count One *Bivens* claim was not precluded by the CSRA, the Court further finds that Plaintiff has failed to state a claim for which relief may be granted. In Count One, Plaintiff alleges that Defendants used the pretext of unacceptable performance and failure to comply with her PIP to seize Plaintiff's property and liberty interests in her federal employment without "pre-termination or post-termination due process on the genuine basis for seizing her rights." Am. Compl., ECF No. 17, ¶ 189.

However, the allegations in Plaintiff's Amended Complaint demonstrate the falsity of this assertion. Plaintiff was told that she had received an unacceptable rating and was given an opportunity to improve based on a PIP. *Id.* at ¶ 120. She received Notice of a Proposed Removal

upon failing the PIP. *Id.* at ¶ 175. And, represented by counsel, she submitted written and oral responses to the Notice prior to her termination. *Id.* at ¶¶ 177-83.

Pursuant to the Fifth Amendment, individuals are entitled to "notice and an opportunity to be heard before the Government deprives them of property" interests. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (finding that notice and "some form of hearing" are all that due process requires). Prior to her termination, Plaintiff received both notice and an opportunity to be heard. And, Plaintiff's responses to her Notice of Removal were delivered both in writing and orally through her counsel. As such, the Court finds that Plaintiff has not alleged a violation of her Fifth Amendment due process rights. *See Solomon v. Office of Architect of Capitol*, 539 F. Supp. 2d 347, 351 (D.D.C. 2008) (dismissing due process claim for termination where the federal employee was provided notice and an opportunity to be heard); *Thompson v. D.C.*, 530 F.3d 914, 919 (D.C. Cir. 2008) (explaining that due process requires a government employee receive notice and a hearing at the time of an allegedly pretextual termination).

As such, even if the Court had not dismissed Plaintiff's Count One *Bivens* claim as precluded by the CSRA, the Court also DISMISSES Plaintiff's claim for failure to state a Fifth Amendment due process violation.

### 2. Count Two- RICO Claim

Next, for similar reasons, the Court finds that the comprehensive nature of the CSRA as well as Title VII preempt Plaintiff's RICO claim. Plaintiff fails to cite any case in any court which has allowed a RICO claim analogous to Plaintiff's claim to proceed. And, all of the cases identified by the Court have dismissed RICO claims brought by federal employees against their supervisors or coworkers as preempted by the CSRA and Title VII.

The parties did not cite and the Court could not find a D.C. Circuit case concerning the preclusion of RICO claims. However, in resolving the issue of preclusion of Plaintiff's RICO claim, the Court is persuaded by the First Circuit's reasoning in *Gonzalez v. Velez*, 864 F.3d 45 (1st Cir. 2017). In *Gonzalez*, plaintiffs were civilian employees of the Department of Army Civilian Police. Plaintiffs argued that their supervisors and co-workers conspired to prevent one of the plaintiffs from getting a supervisory position by fabricating charges which resulted in both plaintiffs being suspended from their employment and undergoing a criminal investigation. 864 F.3d at 48-50. Plaintiffs brought a RICO charge against their supervisors and co-workers based on these events. In considering the plaintiffs' attempts "to blaze a trail to relief by alleging RICO violations," the First Circuit concluded that "the CSRA and Title VII, taken together, preclude a civil RICO action brought by a federal employee against his coworkers and supervisors." *Id.* at 55.

In explaining its reasoning, the First Circuit stated that the CSRA is the "exclusive mechanism for challenging adverse personnel actions in federal employment." *Id.* at 55 (internal quotation marks omitted). Similarly, citing Supreme Court precedent, the court stated that "Title VII 'provides the exclusive judicial remedy for claims of discrimination in federal employment.'" *Id.* (quoting *Brown v. GSA*, 425 U.S. 820, 835 (1976)). Taken together, the court concluded that the CSRA and Title VII leave no avenue for a RICO claim based on allegations of adverse employment actions by a federal employee. The court further noted that the CSRA explicitly allows federal employees to continue pursuing rights and remedies under a list of enumerated statutes. *Id.* (citing 5 U.S.C. § 2302(d)). However, RICO is not one of the enumerated statutes which the CSRA "shall not be construed to extinguish or lessen." *Id.* (quoting 5 U.S.C. § 2302(d)). Following the maxim "inclusio unius est exclusio alterius," the

court concluded that the exclusion of RICO from the list of protected statutes meant that the CSRA precludes RICO claims for personnel actions. *Id.*

The Court agrees with the First Circuit in *Gonzalez*. The Court has already explained the preclusive effect of the CSRA's comprehensive remedial scheme for challenging personnel actions. *See Supra* Sec. III.B.1. And, as with her *Bivens* claim, Plaintiff's RICO claim is essentially challenging personnel actions. Moreover, while the CSRA explicitly removes some statutes from its preclusive effect, RICO is not one of those statutes. 5 U.S.C. § 2302(d). And, insofar as Plaintiff's RICO claim in any way relates to alleged discrimination in selecting her for termination, Plaintiff's claim is precluded by Title VII, which is the "exclusive judicial remedy for claims of discrimination in federal employment." *Brown*, 425 U.S. at 835.

Again, as with her *Bivens* claim, Plaintiff is attempting to use RICO to obtain a statutory remedy for an employment-related injury based on a federal personnel action. To allow Plaintiff to do so would subvert congressional and judicial aims of unifying challenges to federal personnel actions under the CSRA and unifying federal employee discrimination allegations under Title VII. *See Bloch v. Exec. Office of the Pres.*, 164 F. Supp. 3d 841, 857 (E.D. Va. 2016) (explaining that "a civil RICO claim like the one plaintiff seeks to assert here, namely alleging unlawful activity in connection with plaintiff's removal from federal employment, is precluded under the CSRA"); *Abou-Hussein v. Mabus*, No. 14-cv-2597, 2015 WL 5178460, *2-3 (D.S.C. Sep. 3, 2015) (finding RICO claims related to federal employment precluded by the CSRA); *Ferris v. American Fed. Of Gov't Employees*, 98 F. Supp. 2d 64, 68-69 (D. Me. 2000) (finding the plaintiff's RICO claims based on "what are essentially personnel actions" to be precluded by the CSRA); *Rosenthal v. United States*, No. 97–C–1424, 1998 WL 312118 at *11 (N.D. Ill. June 6, 1998) (finding plaintiff's RICO claim barred by the CSRA "to the extent [the claim] is

contesting any [personnel] action taken."), *aff'd*, 175 F.3d 1020 (7th Cir. 1999) (unpublished opinion), *cert. denied*, 528 U.S. 876 (1999).

In summary, the Court finds that Plaintiff's RICO claim is precluded by the CSRA which has created "a comprehensive scheme for reviewing personnel action[s] taken against federal employees." *Krc*, 989 F.2d at 1217 (quoting *Fausto*, 484 U.S. at 455), and by Title VII which provides the exclusive remedy for discrimination claims by federal employees, *Brown*, 425 U.S. at 835. Because Plaintiff's RICO claim is precluded by the CSRA and Title VII, the Court DIMISSES Plaintiff's Count Two RICO claim.

Even if Plaintiff's Count Two RICO claim was not precluded by the CSRA and Title VII, the Court further finds that Plaintiff has failed to state a claim for which relief may be granted. In order to state a claim for a RICO violation, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." W. *Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (internal quotation marks omitted). Plaintiff alleges that a group of SEC employees constituted an enterprise that schemed to obtain Plaintiff's property in her federal employment by lying to federal officers about her work performance, by mail fraud, and by extortion. Am. Compl., ECF No. 17, ¶ 205. Specifically, Plaintiff's claim that Defendants gave her an unacceptable performance review and a failure on her PIP in order to extort her either to quit or to face termination so that other positions could be created at the SEC. In making this claim, Plaintiff is attempting to transfigure what is essentially an employment termination claim into a RICO claim. RICO was not enacted to address such claims.

Congress enacted RICO "to target … the exploitation and appropriation of legitimate business by corrupt individuals." *Moore v. Castro*, 192 F. Supp. 3d 18, 36-37 (D.D.C. 2016)

(quoting *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d

132, 139 (D.C. Cir. 1989)). Plaintiff's "lawsuit has nothing to do with an injury to [her]

commercial business. It has everything to do with an employment-related injury." *Id.* at 37. As

previously explained, Plaintiff's claims fall under the purview of the CSRA and Title VII, not

RICO.

Additionally, Plaintiff has failed to allege a pattern of racketeering with sufficient

particularity. In determining whether or not Plaintiff has alleged a pattern of racketeering, courts

consider "the number of unlawful acts, the length of time over which the acts were committed,

the similarity of the acts, the number of victims, the number of perpetrators, and the character of

the unlawful activity." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260,

1265 (D.C. Cir. 1995) (internal quotation marks omitted). "When defendants are accused of

engaging in 'a single scheme' with a 'single injury[ ] and few victims' it is 'virtually impossible

for plaintiffs to state a RICO claim.'" *Moore*, 192 F. Supp. 3d at 37 (quoting *Alban Towers*, 48

F.3d at 1265).

Here, Plaintiff has pled a single scheme of the alleged two-step removal method—giving

employees unacceptable performance reviews and extorting them to resign or face termination.

Plaintiff makes the conclusory allegations that this termination method "was used on some or all

of the women targeted" in the SEC's front office and that she has spoken to others subjected to

the termination method. Am. Compl., ECF No. 17, ¶¶ 75-78.

Plaintiff bases her RICO claims on false statements, 18 U.S.C. § 1001, mail fraud, 18

U.S.C. § 1341, and extortion, 18 U.S.C. § 872. "[W]here a RICO claim is based on predicate acts

involving fraud, courts have routinely applied [Federal Rule of Civil Procedure] 9(b)." *Ambellu

v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 83 (D.D.C. 2019). Rule 9(b)

states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, Plaintiff has failed to allege with any degree of particularity the other alleged victims, the allegedly fraudulent statements made to or about those victims, which Defendants made those alleged statements, and whether or not the statements were actually false or fraudulent. Plaintiff has failed to make allegations sufficient to withstand the normal pleading standards, let alone Rule 9(b)'s heightened standard. The only alleged fraud pled with any level of particularity involves the events related to Plaintiff's termination. And, the events related to Plaintiff's termination alone do not state a pattern of racketeering. *See Moore*, 192 F. Supp. 3d at 37 (explaining that the events related to the termination of a single victim cannot state a claim for racketeering).

As such, even if the Court had not dismissed Plaintiff's Count Two RICO claim as precluded by the CSRA and Title VII, the Court also DISMISSES Plaintiff's claim for failure to state a RICO violation.

## C. Plaintiff's Discrimination Claims

The Court now turns to Plaintiffs' Count Three claim for Title VII gender discrimination, Count Four ADEA claim for age discrimination, and Count Five claim for Title VII religious discrimination. For these discrimination claims, Defendants contend that neither Plaintiff's unacceptable performance rating nor her placement on a PIP constitute adverse employment actions which can sustain independent claims. The Court agrees.

In order to establish a prima facie case of discrimination under the applicable test, established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its progeny, a plaintiff must show that he or she: "(1) belongs to a protected class; (2) suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of

discrimination." *Brown v. D.C.*, 251 F. Supp. 2d 152, 160 (D.D.C. 2003). After a plaintiff has established a prima facie case of discrimination or retaliation, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the action. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. Where an employer offers "clear and reasonably specific nondiscriminatory reasons for the adverse employment action, the court need not decide whether the plaintiff has made out a prima facie case." *Royall v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008) (internal quotation marks and citation omitted). The plaintiff then bears the burden of proving that the defendant's proffered reason is pretextual. *Harris v. District of Columbia Water and Sewer Auth.*, 172 F. Supp. 3d 253, 268 (D.D.C. 2016). The standard for alleging a claim under Title VII is the same as that for alleging a claim under the ADEA. *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) ("We consider [plaintiff's] age ... discrimination claim[ ] in the same way we analyze Title VII claims.").

Defendants do not argue that Plaintiff's discrimination claims should be dismissed in full. Instead, Defendants argue that Plaintiff's unacceptable performance rating and placement on a PIP cannot sustain independent discrimination claims because those incidents do not constitute adverse employment actions. From the Amended Complaint, it is not clear whether or not Plaintiff is asserting multiple discrimination claims based on the unacceptable performance rating and the PIP. For each Count, Plaintiff "repeats and re-alleges each and every allegation of the" entire Amendment Complaint. Am. Compl., ECF No. 17, ¶¶ 207, 215, 223. However, the Counts do not specifically mention the unacceptable rating or the PIP, and state only that the "[r]emoval of Plaintiff was an adverse employment action." *Id.* at ¶¶ 213, 221, 230. Based on these statements, it appears that Plaintiff is alleging discrimination claims only as to her termination, with the unacceptable performance rating and the PIP allegations providing context.

*See* Pl.'s Opp'n, ECF No. 23, 35 ("The rendering of a performance appraisal is not one of Plaintiff's 'claims' in the sense of a separate basis for recovery."). Nevertheless, to avoid confusion, the Court will explain why Plaintiff's unacceptable performance rating and placement on a PIP cannot sustain independent discrimination claims.

An adverse employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 281 (D.D.C. 2011) (quoting *Douglas v. Donovan*, 559 F.3d 549 (D.C. Cir. 2009)). In this Circuit, "performance evaluations ordinarily are not actionable under Title VII" and by extension the ADEA. *Douglas*, 559 F.3d at 552. Similarly, placement on a PIP is not ordinarily actionable. *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003). Performance evaluations and placement on a PIP are usually not actionable in discrimination claims because they do not materially affect a plaintiff's employment. And, here Plaintiff has presented no evidence that her unacceptable performance rating or her placement on a PIP materially affected the conditions of her employment. While the unacceptable performance rating and the placement on a PIP eventually led to Plaintiff's termination, neither of the events in and of themselves caused any change in Plaintiff's employment.

For these reasons, the Court concludes that Plaintiff's unacceptable performance rating and her placement on a PIP do not constitute adverse employment actions and cannot form the basis of independent discrimination claims under Title VII or the ADEA. However, Plaintiff may proceed with her Counts Three, Four, and Five discrimination claims based on her termination. Plaintiff's allegations concerning her unacceptable performance rating and her placement on a

PIP may be considered as background and context for her discrimination claims based on her termination.

## D. Plaintiff's Retaliation Claim

Finally, the Court considers Plaintiff's Count Eight claim for Title VII retaliation. Again, for this retaliation claim, Defendants contend that neither Plaintiff's unacceptable performance rating nor her placement on a PIP can sustain independent claims because both these employment actions occurred prior to Plaintiff's protected activity. The Court agrees.

To state a Title VII claim for retaliation, "a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). "If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions." *Id.* If the employer proffers a non-discriminatory explanation for the conduct at issue, the burden-shifting framework "disappears," and the Court "looks to whether a reasonable jury could infer ... retaliation from all the evidence." *Id.* (internal quotation marks omitted).

Defendants contend that Plaintiff's unacceptable performance rating and her placement on a PIP do not constitute adverse actions for purposes of Plaintiff's retaliation claim because the events happened prior to Plaintiff engaging in protected activity, negating any causal connection. To begin, it appears that Plaintiff is basing her retaliation claim only on her termination. Am. Compl., ECF No. 17, ¶ 246 ("By retaliating against Plaintiff by removing her because Plaintiff had engaged and continued to engage in statutorily protected activity, Defendants violated Title VII."). Nevertheless, the Court shall explain why Plaintiff cannot state a retaliation claim based on her unacceptable performance review or her placement on a PIP.

Plaintiff was informed on November 8, 2017 that she was rated unacceptable and that she would be placed on a PIP. *Id.* at ¶ 120. But, Plaintiff does not allege that she engaged in protected activity until January 23, 2018 when she made initial contact with the OEEO to report discrimination. *Id.* at ¶ 233. Because the alleged employment actions occurred prior to the protected activity, Plaintiff cannot causally connect her unacceptable performance rating or her placement on a PIP to her protected activity. *See Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) ("we have long held that a 'causal connection … may be established by showing the employer had knowledge of the employee's protected activity and the adverse … action occurred shortly after that activity"). As such, Plaintiff's unacceptable performance rating and her placement on a PIP cannot serve as independent grounds for retaliation claims.

For these reasons, the Court concludes that Plaintiff's unacceptable performance rating and her placement on a PIP cannot form the basis for independent retaliation claims under Title VII. However, Plaintiff may proceed with her Count Eight claim for termination. Plaintiff's allegations concerning her unacceptable performance rating and her placement on a PIP may be considered as background and context for her retaliation claim based on her termination.

## E. Plaintiff's Remaining Claims

The Court's Memorandum Opinion has dismissed many of the Defendants and some of Plaintiff's claims. Following this Memorandum Opinion and accompanying Order, the following claims against the following Defendants remain:

• Count Three Title VII gender discrimination claim based on Plaintiff's termination against Defendant Clayton in his official capacity as the Chairman of the SEC;

• Count Four ADEA age discrimination claim based on Plaintiff's termination against Defendant Clayton in his official capacity as the Chairman of the SEC;

• Count Five Title VII religious discrimination claim based on Plaintiff's termination against Defendant Clayton in his official capacity as the Chairman of the SEC; and

- Count Eight Title VII retaliation claim based on Plaintiff's termination against Defendant Clayton in his official capacity as the Chairman of the SEC.

For the reasons explained above, all other claims and all other Defendants are DISMISSED. Because the relevant Defendants and claims in this case have been limited, the Court ORDERS Plaintiff to file a Second Amended Complaint containing allegations relevant only to the remaining claims as the Court has determined.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [22-1] Motion for Partial Dismissal. First, Plaintiff's Count Seven hostile work environment and Count Nine whistleblower retaliation claims are voluntarily DISMISSED. Plaintiff's Count One *Bivens* claim and Count Two RICO claim are DISMISSED as being precluded by the CSRA and Title VII and for failing to state a claim for which relief may be granted. Plaintiff's Counts Three, Four, and Five claims for Title VII and ADEA discrimination may proceed only as to Plaintiff's termination, as that is the only cognizable adverse employment action, and only as to Defendant Clayton in his official capacity, as he is the only proper Defendant. Finally, the Court similarly finds that Plaintiff's Count Eight retaliation claim may proceed only as to Plaintiff's termination, as that is the only employment action causally connected to a protected activity, and only as to Defendant Clayton in his official capacity, as he is the only proper Defendant.

Because Plaintiff's claims and the Defendants against whom those claims are brought have been altered by this Memorandum Opinion, the Court further ORDERS Plaintiff to file a Second Amended Complaint, containing only the relevant allegations as the Court has determined. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____<br>
COLLEEN KOLLAR-KOTELLY<br>
United States District Judge