**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**KIMBERLY EARLE,**

       **Plaintiff,**

  **v.**

**PAUL S. ATKINS, Chairman, U.S. Securities and Exchange Commission,**[1]

       **Defendant.**

</td><td>

**Case No. 19-cv-1419 (CKK/GMH)**

</td></tr>
</table>

**<u>MEMORANDUM OPINION AND ORDER</u>**

In this action, Plaintiff Kimberly Earle alleges that her termination by Defendant, the Chairman of the Securities and Exchange Commission ("Defendant," the "SEC," or the "Commission"), constituted retaliation for engaging in protected activity and discrimination based on her gender and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and discrimination based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* To support her claims, she plans to rely in part on the report and testimony of Ira W. Kitmacher, whom she has retained as an expert. The SEC has moved to exclude certain opinions of Kitmacher under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.[2] For the reasons that follow, the motion is granted in part and denied in part.

---

[1] The current chair of the Securities and Exchange Commission is substituted for the former chair pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The filings most relevant to this Memorandum Opinion and Order are: (1) Defendant's motion to exclude the testimony of Ira W. Kitmacher and its exhibits, ECF No. 66 through 66-2; (2) Plaintiff's opposition and its exhibits, ECF No. 67 through 67-4; and (3) Defendant's reply, ECF No. 69. Page numbers cited herein are those assigned by the Court's CM/ECF system.

## I.     BACKGROUND

To foster understanding of the dispute before the Court, it is necessary to provide some explanation of the factual allegations and legal landscape. As outlined in Judge Kollar-Kotelly's decision granting the SEC's motion for partial dismissal, Plaintiff alleges that she had worked in the SEC's Division of Economic and Risk Analysis (known as "DERA") since 1990. *Earle v. Clayton*, No. 19-cv-1419, 2020 WL 95812, at *2 (D.D.C. Jan. 8, 2020). During the relevant time period—roughly 2017 to 2018—she enjoyed the highest non-managerial pay grade (SK-16)[3] and her first line supervisor was Robert Willis. *See id.* In fiscal year 2017, Willis and other managers "planned to create new managerial positions" in the division, "including a new senior officer po-sition," which was "to be constructed from vacant positions in the DERA which would be repur-posed." *Id.* "[T]he higher the grade level of the vacant position, the fewer vacant positions would be required to create" the new position. *Id.* At the end of fiscal year 2017, "there were insufficient vacant positions to construct the new senior official position," so managers allegedly cooked up a scheme to "extort" Plaintiff—the only Jewish woman at her pay grade, and the individual with the "most years' experience," *id.* *2–3—"either to quit or to face termination" so that the new position could be created, *id.* at *10; *see also id.* at *3. Plaintiff says that scheme involved giving her a false unacceptable performance review and then finding she had failed the ensuing performance improvement plan ("PIP"). *See id.* at *10. Accordingly, in November 2017, Willis stated "that her performance for the fiscal year 2017 was unacceptable, and that she would be placed on a PIP." *Id.* at *2. In the communication accompanying the PIP, Willis asserted that "[d]uring the perfor-mance rating period, [he] provided [Plaintiff] with verbal and written feedback about [her]

---

[3] "The SEC uses an 'SK' pay schedule rather than the 'GS' schedule used elsewhere in the federal civil service." *Wilson v. Clayton*, 272 F. Supp. 3d 25, 28 n.2 (D.D.C. 2017).

performance and met with [her] weekly to assist in developing [her] project priorities and focus on pending deliverables." ECF No. 70-4 at 1. In January 2018, after receiving an email from her union informing her that she "would receive a poor written performance appraisal if she did not resign or accept a demotion," she filed an initial claim with the agency's Office of Equal Employment Opportunity. *Earle*, 2020 WL 95812, at *2. In February 2018, she was given a rating of unacceptable and received her PIP, which lasted until May 2018. *See id.* at *3. "Plaintiff's supervisors ultimately determined that Plaintiff failed the PIP and provided her with a Notice of Proposed Removal on July 30, 2018"; she was removed in September 2018. *Id.*

The claims remaining in this action allege that Plaintiff's termination was retaliatory and discriminatory. *See id.* at *13 (dismissing all other claims originally pleaded). "Discrimination and retaliation claims are subject to the familiar, burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015) (parallel citations omitted). If a plaintiff establishes her prima facie case, "the burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action." *Id.* at 1092. If the employer "proffers such a reason," the plaintiff must then show "that the employer's asserted nondiscriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Id.* (quoting *Allen v. Johnson,* 795 F.3d 34, 39, (D.C. Cir. 2015)). Here, Plaintiff seeks to use Kitmacher's testimony to show that the SEC's asserted reason for terminating her—that her job performance was substandard, *see* ECF No. 70-1 at 5 (Defendant's motion for summary judgment contending that the SEC gave Plaintiff "multiple opportunities to improve her performance and correct the issues with her work product" and that the deciding official "had a genuine and honest belief based on the record that [Plaintiff] performed unacceptably in her

3

position")—was a pretext for retaliation and discrimination, *see* ECF No. 67 at 19 (Plaintiff asserting that Kitmacher's "testimony provides Plaintiff with the opportunity to demonstrate pretext").

Plaintiff intends to establish pretext by showing, in part, that "the relevant SEC managers . . . ignored the appraisal and removal provisions" governing "Performance Management" (or "PM") in federal agencies, which are found in Chapter 43 of the Civil Service Reform Act, 5 U.S.C. Chapter 43, and in 5 C.F.R. Part 430. ECF No. 67 at 19; *see also* 5 U.S.C. § 4301 *et seq.*; 5 C.F.R. § 430.101 *et seq.* Chapter 43 of the Civil Service Reform Act and its implementing regulations "authorize[] agencies to remove employees or reduce them in grade due to 'unacceptable performance,'"[4] *Garrow v. Phillips*, 664 F. Supp. 2, 3 n.1 (D.D.C. 1987) (quoting 5 U.S.C. § 4303(a)), *aff'd sub nom. Garrow v. Gramm*, 856 F.2d 203 (D.C. Cir. 1988), which is defined as "performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position," 5 U.S.C. § 4301(3); *see also* 5 C.F.R. § 432.103(h). The statute requires each federal agency to establish "one or more performance appraisal systems," which, under regulations promulgated by the Office of Personnel Management ("OPM"), provide for such things as establishing performance standards based on objective criteria; communicating to employees the "performance standards and the critical elements" of their positions; evaluating employees on those standards "during the appraisal period"; "assisting employees in improving unacceptable performance"; and reassigning, demoting, or removing employees who, after having been given "an opportunity to demonstrate acceptable performance" nevertheless "continue to have unacceptable performance." 5 U.S.C. § 4302(a), (c). The

---

[4] The parties appear to use "Chapter 43" as a shorthand to refer to the statutes, its regulations, and related provisions. The Court will do the same.

4

regulations elaborate somewhat, defining a "[c]ritical element" as a "work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable" and an "[o]pportunity to demonstrate acceptable performance" as "a reasonable chance" to show "acceptable performance in the critical element(s)" for which the employee has been found wanting and clarifying that, prior to demotion or removal for unacceptable performance, "the agency shall afford the employee a reasonable opportunity to demonstrate acceptable performance" with assistance from the agency. 5 C.F.R. §§ 432.103(b), (d), 432.104.  The regulations also require, for example, development of a performance plan for each employee to be provided to the employee at the beginning of each appraisal period, which will generally last twelve months, *id.* § 430.206; "[o]ngoing appraisal" during the appraisal period of the employee's "[p]erformance on each critical and non-critical element" of the performance plan, *id.* § 430.207(b); and providing the employee, "[a]s soon as practicable after the end of the appraisal period," a "rating of record" that is based "on the evaluation of actual job performance for the designated appraisal period," *id.* § 430.208(a)(1).

To help establish its pretext argument, Plaintiff retained Kitmacher to provide expert testimony on Chapter 43's provisions and the SEC's compliance with them with respect to Plaintiff's performance appraisal and removal.  His report offers opinions on four topics connected to Chapter 43 (some more directly than others): (1) the "SEC's Compliance with 5 U.S.C. Chapter 43, Related to [Plaintiff's] Performance Appraisal" by Willis; (2) the "SEC's Compliance with 5 U.S.C. Chapter 43, Related to its Performance-based Removal Action against [Plaintiff]"; (3) the "SEC's History and Approach Related to [Performance Management]"; and (4) "Any Applicable [Prohibited Personnel Practices]"—as defined in 5 U.S.C. § 2302, which include discrimination under Title VII and the ADEA, as well as retaliation for protected activity, *see* 5 U.S.C. § 2302(b)(1)(A), (B),

(9)—engaged in by the SEC in relation to Plaintiff's termination. *See* ECF No. 66-1 8–24 (Kitmacher expert report). In general terms—further details of the opinions are discussed below—Kitmacher concludes that the SEC was "not in compliance" with the provisions of 5 U.S.C. Chapter 43 governing performance appraisal, "which call[] for ongoing communication," and that Plaintiff's "rights were [consequently] harmed,"[5] ECF No. 66-1 at 8; that the SEC was "not in compliance with" 5 U.S.C. Chapter 43 and 5 C.F.R. §§ 432.103 and 432.104," which require a reasonable opportunity to demonstrate acceptable performance during the PIP" before removal, resulting in harm to Plaintiff's rights, ECF No. 66-1 at 11; that the SEC "has a continuing history of problems in administering its personnel management program" and that Plaintiff "may have been negatively impacted" by those problems, *id.* at 22; and that the SEC's removal of Plaintiff "may have been negatively impacted " and that she "may have experienced the discrimination she alleged, based

---

[5] Kitmacher offers opinions about the SEC's compliance with standards other than those derived from Chapter 43, its regulations, and related statutes, such as the SEC's "own PM program," the relevant collective bargaining agreement, and guidance from OPM and the Merit Systems Protection Board ("MSPB"), ECF No. 66-1 at 8; *see also id.* at 11; however, both Plaintiff and Defendant focus on his opinions regarding the agency's compliance with Chapter 43 standards. *See, e.g.*, ECF No. 66 at 5–6 (Defendant challenging Kitmacher's opinions about whether the SEC "complied with the law" as inadmissible legal conclusions); ECF No. 67 at 13 (Plaintiff contending that "[w]ithout an expert to testify as to the design, purpose, and requirements of Chapter 43 in the context of federal employment, the jury will be denied information critical to this action"); ECF No. 69 at 3 (Defendant contending that the standard the jury will apply "offers no space for unnecessary 'expert' testimony about the contours of Chapter 43 and whether the Commission complied with the technical elements contained therein"). Similarly, Plaintiff's cross-motion for summary judgment and opposition to Defendant's motion for summary judgment argues only that the SEC's conduct violated Chapter 43, rather than any other standard. *See* ECF No. 72-1 at 33–35, 41–45. Accordingly, this discussion, too, focuses on Kitmacher's opinions related to Chapter 43.

To the extent that Plaintiff seeks to have Kitmacher testify on so-called "best practices," the Court is unconvinced that such opinions are admissible. First, although Plaintiff works that phrase into her opposition occasionally, *see, e.g.*, ECF No. 67 at 17 ("Mr. Kitmacher will present his opinion about whether the actions the SEC took with respect to Plaintiff, in the appraisal process and PIP process, were consistent with regulatory requirements and best practices."), Kitmacher does not employ it in either his expert report or his deposition, *see* ECF No. 66-1; ECF No. 66-2. More, courts have excluded such testimony because "[t]he law is clear that an employer's conduct need not be fair and need not represent good employment practice; it need only be non-discriminatory." *Naeem v. McKesson Drug Co.*, No. 95-cv-5425, 2001 WL 1141803, at *2 (N.D. Ill. Aug. 14, 2001); *accord Pagan-Aponte v. McHugh*, No. 09-cv-800, 2011 WL 1789962, at *3 (M.D. Tenn. May 10, 2011); *Malone*, 2009 WL 10672523, at *6; *see also Harris v. Noem*, No. 21-cv-1083, 2025 WL 915701, at *27 (D.D.C. Mar. 26, 2025) ("[C]ourts do not concern[] themselves with whether an employer's actions were 'wise, fair, or correct' when they consider whether an employer's explanation may have been pretextual." (quoting *Kelly v. Mills*, 677 F. Supp. 2d 206, 228-29 (D.D.C. 2010))).

6

on her gender, religion, and age, and that she may have been retaliated against for her protected activities," *id.* at 26.

## II.      LEGAL STANDARD

The admissibility of expert testimony is governed by provisions of both the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  Procedurally, where, as here, a proposed expert is "retained or specially employed to provide expert testimony on the case," he or she must provide an expert report containing, among other things, "the witness's qualifications," "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii), (iv).  Requiring full disclosure of expert opinions not only protects litigants from being sandbagged, but also "aids the court in addressing admissibility issues" effectively.  *Current v. Atochem N. Am., Inc.*, No. 00-CA-332, 2001 WL 36101282, at *1 (W.D. Tex. Sep. 18, 2001); *see also, e.g.*, *KBS Preowned Vehicles, LLC v. Reviva, Inc.*, No. 13-cv-138, 2014 WL 1479169, at *10 (N.D.W. Va. Apr. 14, 2014) ("[T]he disclosure requirements of the Rules are also particularly helpful to the court in making rulings limiting or restricting expert testimony pursuant to Evidence Rules 104(a) and 702 and *Daubert*." (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 n. 9 (D.N.J. Mar. 27, 1996))).  Under Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).  That is, "a party will not ordinarily be permitted to use on direct examination any expert testimony

not . . . disclosed" as required by Rule 26(a)(2)(B).  Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment.

Rule 702 of the Federal Rules of Evidence provides substantive requirements for the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  That is, where a party offers testimony from an individual under Rule 702, a court must decide whether the individual is qualified to testify as an expert, whether the testimony offered will be helpful to the trier of fact, and whether the offered opinion is sufficiently reliable to be admissible.[6]  Although there is "some overlap" in the inquiries, these questions "are distinct concepts that courts and litigants must take care not to conflate."  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).  More, since "[e]xpert evidence can be both powerful and quite misleading [to a jury] because of the difficulty in evaluating it," courts

---

[6] "[A] trial court has discretion to conduct the reliability and helpfulness analysis that *Daubert* and Rule 702 require in the context of a summary judgment motion, and to exclude expert testimony found wanting from its consideration in ruling on the motion." *Arsanjani v. United States*, No. 19-v-1746, 2023 WL 3231101, at *3 (D.D.C. May 3, 2023) (quoting *Carmichael v. West*, No. 12-cv-1969, 2015 WL 10568893, at *7 (D.D.C. Aug. 31, 2015)), *aff'd*, No. 23-5109, 2024 WL 718726 (D.C. Cir. Feb. 20, 2024); *see also, e.g.*, *Boesen v. Brown*, No. 19-cv-3499, 2023 WL 7552688, at *4 (D.D.C. Nov. 14, 2023) (same).  Here, where the parties have submitted briefs on the issues, Kitmacher has "had ample opportunity to defend [his] report[] in [a] deposition[]," and the offered testimony is not "on a subject so overly scientific or complex that an additional hearing would alter the admissibility analysis," the Court will engage in the required analysis without further input from the parties. *Arsanjani*, 2023 WL 3231101, at *3; *see also Boesen*, 2023 WL 7552688, at *4 (similar); *United States v. Jones*, 918 F. Supp. 2d 1, 7 (D.D.C. 2013) (asserting that "[i]t is well established that a court 'is not required to hold an evidentiary hearing regarding the admissibility of expert testimony'" where the subject of the proposed expert testimony is not overly complex "and the issues are thoroughly briefed" (quoting *United States v. Fama*, No. 12-cr-186, 2012 WL 6102700, at *4 (E.D.N.Y. Dec. 10, 2012))).

must consider Rule 403 of the Federal Rules of Evidence, which "permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Id.* (first quoting Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991); and then quoting Fed. R. Evid. 403); *see also United States ex rel. Morsell v. Symantec Corp.*, No. 12-cv-800, 2020 WL 1508904, at *7 (D.D.C. Mar. 30, 2020) ("[T]he danger of prejudice from the presentation of expert testimony is significant because of the potential for the jury to accept an expert witness's testimony automatically." (quoting *Edmonds v. United States*, No. 05-cv-540, 2009 WL 969938, at *1 (D.D.C. Apr. 7, 2009)).

Preliminary questions about the qualification of a witness and the admissibility of evidence are decided by the Court under a preponderance of the evidence standard.   *See* Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  "The proponent of the expert testimony bears the burden to establish the admissibility of the testimony and the qualifications of the expert." *United States v. McGill*, 815 F.3d 846, 903 (D.C. Cir. 2016).

## III.   DISCUSSION

As noted, a court faced with a motion to exclude expert testimony must generally answer three questions: (1) Is the proposed expert qualified to testify as to the proffered opinions? (2) Will the proffered testimony be helpful to the trier of fact? and (3) Is the testimony reliable?  Here, there is no real dispute about whether Kitmacher is qualified as an expert, so that issue is addressed only briefly at the outset.  The parties do have a fundamental disagreement about whether his proffered testimony is relevant to an issue to be decided and, because that issue relates to the bulk of Kitmacher's proposed opinions, the Court addresses it second.  The rest of this section analyzes

the admissibility of Kitmacher's opinions related to each of the four specific topics noted above in turn.

### A.     Qualification

An individual may be qualified to testify as an expert based on his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The degree of 'knowledge, skill, experience, training, or education' sufficient to qualify an expert witness is only that necessary to [e]nsure that the witness's testimony helps the trier of fact," that is, that the testimony "advances the trier of fact's understanding to any degree." 29 Wright & Miller's Federal Practice and Procedure § 6264.1 (2d ed. 2025); *see also Morsell*, 2020 WL 1508904, at *3 (similar). As such, "[t]he court's investigation of qualifications should not be onerous or inordinately exacting, but rather must look to underlying competence, not labels." *Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 689, 725 (E.D. Mich. 2024) (quoting *Zuzula v. ABB Power T&D Co.*, 267 F. Supp. 2d 703, 713 (E.D. Mich. 2003)); *see also, e.g.*, *Shafer v. C.R. Bard, Inc.*, No. C20-1056, 2021 WL 4305216, at *2 (W.D. Wash. Sep. 22, 2021) ("Because the Rule 'contemplates a broad conception of expert qualifications,' only a 'minimal foundation of knowledge, skill, and experience' is required." (emphasis omitted) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004))); 29 Wright & Miller's Federal Practice and Procedure § 6264.1 (2d ed. 2025) ("[C]ourts have found witnesses to be qualified as experts based on only a relatively modest degree of specialized knowledge. . . . Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility. . . . Rule 702 takes a liberal approach to expert witness qualification." (footnotes omitted)).

Kitmacher asserts that he is "an expert on federal HR matters, including those related to [personnel management], removal, restructuring, and [prohibited personnel practices]." ECF No.

10

66-1 at 5. He worked in human resources for 36 years in various positions at various federal agencies, including, at his retirement, as the Chief Human Capital Officer and Human Resources Director for the Federal Deposit Insurance Corp. ("FDIC"). *See id.* He has taught human resources courses at universities and trained human resources professionals. *See id.* at 6. He is also a licensed attorney. *See id.* Plaintiff highlights his four-year stint as the "senior-most human resources" executive at the FDIC, as well as his credentials as "an attorney and professor." ECF No. 67 at 12. Plaintiff also observes that "Defendant apparently concedes Mr. Kitmacher's qualification to testify as an expert on Chapter 43, specifically, and the content and application of federal employment law in a federal financial agency." *Id.*

The SEC objects to that last claim, contending that Kitmacher "is not qualified under Federal Rule of Evidence 702" because his opinions are neither "based on sufficient facts or data" nor "the product of reliable principles and methods." ECF No. 69 at 4 (quoting Fed. R. Evid. 702(b), (c). But those are not issues of qualification, which asks only whether the individual has a sufficient "degree of 'knowledge, skill, experience, training, or education'" to "help[] the trier of fact" by "advanc[ing] the trier of fact's understanding to any degree." 29 Wright & Miller's Federal Practice and Procedure § 6264.1 (2d ed.). Rather, they are challenges to the reliability of his opinions. *See Quiet Tech. DC-8*, 326 F.3d at 1341 (noting that qualification, helpfulness, and reliability "are distinct concepts that courts and litigants must take care not to conflate"). The SEC does not suggest that Kitmacher lacks sufficient "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, to opine on the "federal HR matters" he addresses, ECF No. 66-1 at 5. Given the "relatively modest degree of specialized knowledge" necessary to qualify as an expert, 29 Wright & Miller's Federal Practice and Procedure § 6264.1 (2d ed.), and because the SEC offers no argument that Kitmacher has insufficient "knowledge, skill, experience, training, or education" to offer

his opinions, Fed. R. Evid. 702, the Court finds Kitmacher qualified under Rule 702 of the Federal Rules of Evidence.

### B.      Relevance

"Expert testimony which is not relevant is ergo non-helpful." *Dyson v. Winfield*, 113 F. Supp. 2d 44, 47 (D.D.C. 2000) (citation modified) (quoting *Daubert*, 509 U.S. at 591)).  As noted, the parties disagree on the fundamental issue of whether the workings of Chapter 43 are relevant to the issues to be decided in this case.  According to Plaintiff:

> Defendant asserts that it correctly and lawfully used Chapter 43 in: (1) evaluating and giving Plaintiff an "unacceptable" rating (on February 20, 2018) for her work performance during the SEC's Fiscal Year 2017, which ended on September 30, 2017 ("FY2017"); (2) evaluating and giving Plaintiff an "unacceptable" rating (on July 23, 2018) for her work performance during the ensuing 90-day Performance Improvement Plan ("PIP"), which ran from February 20, 2018 to May 19, 2018 ("2018 PIP"), and proposing her removal; and (3) finalizing the proposed removal on September 30, 2018.

ECF No. 67 at 7–8.  Therefore, Plaintiff maintains that

> [t]o show discrimination, [she] must demonstrate that (1) Chapter 43 was the mechanism by which SEC agents could remove her to re-purpose her compensation for the new associate director position; (2) Plaintiff was chosen as the employee to be removed because of her age, sex, and religious preference; and (3) SEC agents ignored Chapter 43's appraisal requirements to improperly effect Plaintiff's removal. In other words, although the SEC used the Chapter 43's processes to assert that Plaintiff was removed based on performance, *this was a sham and her alleged subpar performance served simply as a pretext*.  Accordingly, Plaintiff must introduce evidence showing that the SEC did not comply with Chapter 43.

*Id.* at 10 (emphasis added).  The SEC, on the other hand, contends that the question to be determined is whether Plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee," which hinges on whether the managers involved in her termination "honestly believe[d] in the reasons [they] offer[ed]" for that adverse employment action.  ECF No. 69 at 2–3 (first quoting *Brady v. Off. of Sergeant at Arms*, 520 F.3d

12

490, 494 (D.C. Cir. 2008), and then quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).  Thus, according to the agency "the actual issue to be resolved" is whether Plaintiff can show that the SEC "did not actually believe she was underperforming," an issue that "offers no space for unnecessary 'expert' testimony about the contours of Chapter 43 and whether the Commission complied with the technical elements contained therein."  *Id.* at 3.

Neither party gets this quite right.  The SEC is correct that Plaintiff has engaged in "the wholesale invention" of a defense strategy that depends on the agency's compliance with Chapter 43.  ECF No. 69 at 3.  A glance at the SEC's motion for summary judgment demonstrates that is not the agency's argument.  *See generally* ECF No. 70-1.  Chapter 43 is nowhere mentioned, nor is it relied on implicitly.  *See id.*  Rather, on the issue of pretext—the issue on which Plaintiff asserts she "must introduce evidence showing that the SEC did not comply with Chapter 43," ECF No. 67 at 10—Defendant argues that Plaintiff "has not, and cannot, establish that the Commission did not honestly believe that her performance was deficient" and, further, that Plaintiff has "failed to provide any evidence that the Commission had any discriminatory motive underlying its decision" to remove her.  ECF No. 70-1 at 15–16.

Nevertheless, the SEC's insistence that there is "no space," ECF No. 69 at 3, for testimony about whether it complied with the statute and regulations that "authorize[] agencies to remove employees . . . due to 'unacceptable performance,'" *Garrow*, 664 F. Supp. at 3 n.1 (quoting 5 U.S.C. § 4303(a)), is not well-taken.  "One way that an employee can prove his employer's stated reason is pretext is by pointing to the 'employer's failure to follow established procedures or criteria.'"  *Crowley v. Perdue*, 318 F. Supp. 3d 277, 293 (D.D.C. 2018) (quoting *Brady*, 520 F.3d at 495 n.3); *accord Francis v. District of Columbia*, 731 F. Supp. 2d 56, 72 (D.D.C. 2010).  That is,

a showing that SEC managers failed to comply with Chapter 43 may have some relevance to the question of whether Plaintiff's deficient performance was not the real reason for her removal.[7]

Accordingly, the Court finds that, *as a general matter*, testimony about whether the SEC complied with the requirements of Chapter 43 and its supporting regulations in the lead-up to and accomplishment of Plaintiff's termination is relevant to whether the agency's professed reason for removing her—that her performance was deficient—was pretextual. That does not mean, however, that the *specific opinions* Kitmacher offers are relevant or that they would be helpful to the factfinder. Indeed, as discussed below, only fragments of Kitmacher's opinions are admissible. *See, e.g.*, *O'Hara v. Lott*, No. 23-cv-442, 2025 WL 2549231, at *14 (E.D. Mo. Sep. 4, 2025) ("[E]xpert testimony 'is not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury,'" (quoting Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 883 (8th Cir. 1998))); *Klein v. Justin D. Heidman, LLC*, 574 F. Supp. 3d 1006, 1012

---

[7] That said, as discussed in the undersigned's Report and Recommendation on the parties' motions for summary judgment, *see* ECF No. 79 at 37–40 (Report and Recommendation Section III.B.1.b), a plaintiff relying on a failure to follow prescribed procedures as evidence of pretext must show not only such a failure, but *also* that the employer regularly followed those procedures. *See Fischbach*, 86 F.3d at 1183 (finding an employer's failure to follow its own regulations and procedures "lends no support at all" to an inference of pretext where such failure "had become the norm"). That is, without evidence that the allegedly incorrect procedures used to impose an adverse employment action were themselves a "deviation from [the employer's] standard practice," the procedures used will not support an inference of pretext. *Lamaute v. Power*, No. 19-cv-3702, 2023 WL 5224654, at *17 (D.D.C. Aug. 14, 2023); *see also, e.g.*, *Jeffries v. Barr*, 965 F.3d 843, 858 (D.C. Cir. 2020) (stating that "an unexplained deviation from [an agency's] standard practices . . . 'can justify an inference of discriminatory motive'" (quoting *Lathram v. Snow*, 336 F.3d 1085, 1093 (D.C. Cir. 2003)); *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1558 (5th Cir. 1996) ("[F]ailing to follow industry custom or federal regulations is not evidence from which a jury could infer racial animus unless Simms showed that First Gibraltar normally conformed with industry custom or complied with federal regulations in handling similar, 'non-protected' applications."). Here, Kitmacher did not examine whether Plaintiff's managers' alleged failures to abide by Chapter 43 and its regulations in assessing her performance and ultimately removing her were a deviation from standard practice at the agency. However, the Court will not exclude Kitmacher's opinion on that basis because although a failure to follow prescribed practices "'*alone*, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual,' . . . [it] is certainly not irrelevant." *Jeffries*, 965 F.3d at 858 (emphasis added) (quoting *Fischbach*, 86 F.3d at 1183). That is, establishing a failure to follow prescribed procedures may not be *sufficient* to make out such a pretext argument, but it is still *necessary*. And, here, although Kitmacher does not opine on whether Plaintiff's managers deviated from their normal practice, evidence other than his own expert testimony could establish that. Accordingly, the Court finds that Kitmacher's opinion as to Plaintiff's managers' noncompliance with Chapter 43 is generally relevant to the issue of pretext even if those opinions are insufficient on their own to establish pretext.

14

(D. Utah 2021) (noting that expert opinions that "invade the[] fundamental roles of the judge and jury . . . are not helpful under Fed. R. Evid. 702").

### C.      Kitmacher's Specific Opinions

Having found that Kitmacher is qualified to testify as an expert and that topics he proposes to address are generally relevant to the issue of pretext, the Court next addresses whether the opinions he offers are otherwise admissible—that is, whether Plaintiff has established by a preponderance of the evidence that his opinions are reliable and will be helpful to the trier of fact. *See, e.g.*, Fed. R. Evid. 104(a), 702; *Quiet Tech. DC-8*, 326 F.3d at 1341.  The SEC's primary argument is that the bulk of Kitmacher's opinions constitute inadmissible legal opinions.  Specifically, it objects to his first and second opinions, which, as characterized in Kitmacher's report, explicitly address the SEC's compliance with Chapter 43—that is, the "SEC's Compliance with 5 U.S.C. Chapter 43, Related to [Plaintiff's] Performance Appraisal" by Willis and the "SEC's Compliance with 5 U.S.C. Chapter 43, Related to its Performance-based Removal Action against [Plaintiff]"—and to his fourth opinion, which addresses "Any Applicable [Prohibited Personnel Practices]" engaged in by the SEC in relation to Plaintiff's termination.[8]  ECF No. 66-1 at 8, 11, 26.  The SEC claims Kitmacher's third opinion, which (like his fourth opinion) does not engage with Chapter 43 specifically but instead concerns the SEC's "history of problems in administering its personnel

---

[8] The parties spill some ink disagreeing about whether Kitmacher offers an opinion on "the ultimate issue" in this case. *See, e.g.*, ECF No. 66 at 4 ("Such opinions . . . go directly to the ultimate issue that is the sole province of this Court—on summary judgment—or the jury."); ECF No. 67 at 17 ("Mr. Kitmacher will present his opinion about whether the actions the SEC took with respect to Plaintiff, in the appraisal process and PIP process, were consistent with regulatory requirements and best practices; he will not address the ultimate issue, whether the SEC's actions amounted to illegal discrimination and retaliation.").  That is surprising because, as the D.C. Circuit has recognized, whether an opinion offered addresses "the ultimate issue" is largely immaterial to the question of its admissibility. *See Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997).  Rule 703 of the Federal Rules of Evidence abrogated earlier "strictures against allowing witnesses to express opinions upon ultimate issues" and provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a) & advisory committee's note to 1972 proposed rules.  More importantly, notwithstanding Rule 704(a), testimony that opines on an ultimate issue "cannot properly assist the trier of fact" if it "consists of legal conclusions." *Burkhart*, 112 F.3d at 1212.  Whether Kitmacher's opinions are inadmissible legal conclusions is one of the key questions here.

15

management program," is irrelevant.  As discussed below, there are several reasons, some of which are related, to exclude the first and fourth opinions and most of the second.  Plaintiff does not respond to the SEC's argument that the third opinion is irrelevant, so the Court deems it conceded and finds, in any event, that the bulk of that opinion is inadmissible because it is not helpful.

        1.      "SEC's Compliance with 5 U.S.C. Chapter 43, Related to Ms. Earle's Performance Appraisal" (Expert Report Section II.A)

On the topic of Plaintiff's performance appraisal, Kitmacher's summary of his opinion asserts, in relevant part, that "based on [his] review and analysis," the SEC "was not in compliance" with Chapter 43, "which calls for ongoing communication," and, as a result, Plaintiff's "rights were harmed."  ECF No. 66-1 at 8.  More comprehensively, he opines (again in relevant part):

> To my knowledge, SEC has not provided evidence that the ongoing dialogue required by Chapter 43 . . . nor the feedback Mr. Willis described were delivered during the performance rating period.[9]  Ms. Earle refuted that any such dialogue or communication was provided.
>
> . . . Mr. Willis' May 13, 2017 mid-year review transmittal email contained no hint of any performance issues or deficiencies.  There was also no indication in Ms. Earle's May 13, 2017 mid-year performance review that her performance was anything less than fully successful.
>
> This lack of communication, at a minimum, is not in compliance with SEC's own PM Program requirements, and does not meet 5 USC 4302, both of which require ongoing communication and dialogue.
>
> Further undercutting Mr. Willis's description of having given Ms. Earle "verbal and written feedback'' that reflected less than fully successful performance, during the FY 17 rating period, on March 20, 2017 Mr. Willis nominated Ms. Earle, along with four of her teammates, for an "*Andrew Barr Award,"* as described above, for *"outstanding performance and dedication to public service and to the agency."*  Also, Ms. Earle was recognized on June 28, 2016 (just prior to the start of the FY '17 performance period) with a "Director's Award," *"in recognition for outstanding work, extraordinary effort, and tireless dedication in furtherance of the Division's mission."*  In my experience, over 36 years in federal HR, I do not recall an

---

[9] As noted, in his February 20, 2018, memo providing Plaintiff her PIP, Willis asserted that he had given her verbal and written feedback on her performance and met with her weekly to assist her in improving it.  *See* ECF No. 70-4 at 1.

16

employee receiving several prestigious awards, such as these, in such close prox-
imity timewise to a PIP and/or performance-based removal. In fact, as an HR pro-
fessional, I would advise the applicable manager against such an action, given these
circumstances.

In my opinion, Ms. Earle's rights were harmed due to SEC's lack of compliance
with Chapter 43, and policies.

It is my opinion that SEC's failure to follow Chapter 43 . . . was a harmful error
that likely caused SEC to reach a conclusion different from the one it would have
reached in the absence or cure of the error.

ECF No. 66-1 at 10–11.

There are some problems with this opinion. Perhaps most obviously, Kitmacher proposes

to testify as to whether Willis complied with applicable regulations. The D.C. Circuit has held

that "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact."

*Burkhart*, 112 F.3d at 1212. The court recognized that "the line between an inadmissible legal

conclusion and admissible assistance to the trier of fact in understanding the evidence or in deter-

mining a fact in issue is not always bright." *Id.* But here, the conclusion that Willis "was not in

compliance . . . with 5 USC Chapter 43" and that Willis' "lack of communication" did "not meet

5 USC 4302," which "require[s] ongoing communication and dialogue," ECF No. 66-1 at 8, are

straightforward legal conclusions. *See Crowley*, 318 F. Supp. 3d at 293 (finding an opinion that

an employee's PIP "didn't comply with the requirements of the Code of Federal Regulations" was

an inadmissible legal conclusion); *see also, e.g., Ramirez v. U.S. Immigr. & Customs Enf't*, No.

18-cv-508, 2019 WL 6036121, at *5 (D.D.C. Nov. 14, 2019) (finding inadmissible an expert's

proffered "opinion on whether ICE is following the requirements of the statute"). Plaintiff rejoins

that Kitmacher's testimony regarding compliance with Chapter 43 and its regulations will help the

trier of fact because "Chapter 43 contains certain requirements and terms of art" that "are technical

and not intuitive," asserting that "[a]n attorney who can testify about a specialized area of law,

17

such as Chapter 43, would assist the trier of fact" and citing *U.S. v. Blick*, 408 F.3d 162 (2d Cir. 2005), for that proposition. ECF No. 67 at 11. There is a case called *United States v. Blick* and it is found at 408 F.3d 162. But it is a case from the Fourth Circuit, not the Second Circuit. *See United States v. Blick*, 408 F.3d 162 (4th Cir. 2005). A typographical error as to the court from which a cited opinion issued is forgivable. But *Blick* has nothing to do with whether an expert's testimony "about a specialized area of law . . . would assist the trier of fact." ECF No. 67 at 11. Rather, it addresses whether the appeal waiver of a defendant who pleaded guilty to seven counts of wire fraud prohibited an appeal of his sentence based on the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005). *See generally Blick*, 408 F.3d at 164–73. That is, Plaintiff has cited *Blick* for a proposition found nowhere in the case, which is a more serious issue. It also leaves Plaintiff's proposition—that, as a general matter, an attorney may testify as an expert as to the meaning of terms of art in a statute—entirely unsupported. Arguments "unsupported by pertinent authority" are forfeited. *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013); *see also United States v. Callwood*, 66 F.3d 1110, 1115 n.6 (10th Cir. 1995) ("A litigant who mentions a point in passing but fails to press it 'by supporting it with pertinent authority forfeits the point.'" (citation modified) (quoting *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990))).

Even if the point were not forfeited, cases have held that an expert should not define legal terms of art; rather, it is the province of the trial judge to instruct the jury on the meaning of relevant legal terms. *See Burkhart*, 112 F.3d at 1213 (stating that "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards" and that if "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular," then "exclusion is appropriate"

18

(quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)); *Clarke v. Healthsouth Corp.*, No. 14-cv-778, 2021 WL 129821, at *6 (M.D. Fla. Jan. 14, 2021) ("Expert witnesses 'are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct.'  Instead, 'the determination of which law applies and what the law means is for the Court to decide.'" (citation modified) (quoting *Dahlgren v. Muldrow*, No. 06-cv-65, 2008 WL 186641, at *5 (N.D. Fla. Jan. 18, 2008))).  Plaintiff has made compliance with Chapter 43 and its regulations a centerpiece of her case:  "[A]lthough the SEC used . . . Chapter 43's processes to assert that Plaintiff was removed based on performance, this was a sham and her alleged sub-par performance served simply as a pretext.  Accordingly, Plaintiff must introduce evidence showing that the SEC did not comply with Chapter 43."  ECF No. 67 at 10.  As such, instruction to the factfinder about the legal requirements of Chapter 43 must come from the judge at trial.

Kitmacher's proposed testimony raises other red flags.  Take, for instance, his statement that, "to [his] knowledge," the SEC failed to "provide[] evidence that the ongoing dialogue required by Chapter 43" and the "feedback Mr. Willis described" in his February 20, 2018, memo to Plaintiff providing her PIP "were delivered during the performance rating period."  ECF No. 66-1 at 11.  As support, he relies on the fact that Plaintiff denied "that any such dialogue or communication was provided" in her response to that memo, as well as that communications from Willis to Plaintiff on May 13, 2017, "contained no hint of any performance issues or deficiencies"; that Willis nominated Plaintiff and "four of her teammates" for a performance award on March 20, 2017; and that in June 2016, Plaintiff had received a different performance award.  *Id.*  At his deposition, although he quibbled with the characterization that he "discounted or gave more credit to" either Willis' statement or Plaintiff's, Kitmacher explained that "as a licensed attorney and a

long time federal executive and manager," he "had many experiences and education on . . . how to handle one person saying one thing and another person saying another" and that he "weighed both of those statements, both Mr. Willis' statement in the PIP as well as [Plaintiff's] statements" in which "she claimed he did not provide her with any ongoing dialogue or communication, and [he] relied on the evidence that [he] saw or did not see of any communications or dialogue that took place during the performance appraisal period."  ECF No. 66-2 at 42–43.  To the extent that Kitmacher offers an opinion weighing the credibility of Willis' assertion that "[d]uring the performance rating period, [he] provided [Plaintiff] verbal and written feedback about [her] performance and met with [her] weekly to assist in developing [her] project priorities and focus on pending deliverables," ECF No. 70-4 at 1, against Plaintiff's denial that she received such feedback—and his deposition indicates he is doing just that—he "invades the jury's province to make credibility determinations."  *Jetport, Inc. v. Landmark Aviation Miami, LLC*, No. 16-cv-23303, 2017 WL 7734095, at \*9, \*12 (S.D. Fla. July 18, 2017) (quoting *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996)).

Relatedly, the method Kitmacher used to conclude that Willis' appraisal of Plaintiff's performance did not comply with Chapter 43 is suspect.  He testified at his deposition that, to reach his conclusion, he "looked at the various background documents, law, regulations," and "specific documents that were provided . . . related to [Plaintiff]."  ECF No. 66-2 at 27.  That is, he "took a look at the circumstances surrounding [P]laintiff's performance appraisal and then . . . reached a determination, based on [his] knowledge and experience, of whether or not that complied with the law."  *Id.* at 30–31.  It appears from his deposition, however, that he did not review certain documents relevant to his conclusions, such as calendar appointments for Willis and Plaintiff to discuss "career development" and at least one email from Willis to Plaintiff that outlines her performance

20

deficiencies and schedules a face-to-face meeting.  *See* ECF No. 66-2 at 43–45, 49–52.  The reliability of an opinion based on a review of the evidence—particularly one that relies in part on a purported *lack* of evidence—is undermined where material evidence was not reviewed.  More, opinion testimony that "draws a legal conclusion by applying law to facts is generally inadmissible."  *United States v. Lab'y Corp. of Am. Holdings*, No. 14-cv-3699, 2021 WL 2253360, at \*3 (D.S.C. June 3, 2021) (quoting *United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006)); *see also, e.g.*, *Magallon v. Robert Half Int'l, Inc.*, 743 F. Supp. 3d 1237, 1249 (D. Or. 2024) ("District courts routinely exclude expert testimony that purports to apply the law to the facts of the case."). That is because it is the jury's role to apply the law on which it has been instructed by the judge to the facts before it.  *See Tang Cap. Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 390–92 (S.D.N.Y. 2024) (excluding as "impermissible . . . application of the law to the facts" of an expert opinion that was based on "what I see in [the relevant documents] and what I see in rules" promulgated by the SEC); *Dickson v. Bosworth Co.*, No. 21-cv-9, 2022 WL 1523490, at \*5 (W.D. Tex. May 13, 2022) (excluding proffered expert testimony that involved applying the law to the facts of the case because it would "invade upon the purview" of both the court and the jury).  Indeed, the court in *Yancey v. Carson* found that an expert report that drew inferences from selective review of testimony and then made "what are essentially legal arguments as to the conclusions that should be drawn" was inadmissible because it was "virtually devoid of any evidence that [the expert's] opinions were arrived at by any methodology, let alone any reliable methodology."  Nos. 04-cv-556, 04-cv-610, 2007 WL 3088232, at \*5 (E.D. Tenn. Oct. 19, 2007).  Similarly, the court in *Richter v. City of Commerce City* could "perceive[] no 'methodology'" where a proposed expert reviewed discovery materials, the defendant's employment policies, and similar evidence, and then "made findings of fact and came to various conclusions after applying the law."  185 F. Supp. 3d

21

1274, 1279 (D. Colo. 2016). It precluded the opinions, finding that they "state[d] legal conclusions by applying law to the facts, passe[d] upon the weight or credibility of the evidence, and usurp[ed] the province of the jury by telling it what result should be reached" on the topics addressed. *Id.*; *see also id.* at 1280–81. Here, Kitmacher's method appears to have been, as the SEC notes, "an attempt to put himself in the shoes of the factfinder" and reach a conclusion, ECF No. 69 at 5, conduct that "usurp[s] . . . the role of the jury." *Tang Cap. Partners*, 757 F. Supp 3d at 391.

Additionally, one of the opinions Kitmacher offers is, besides being a legal conclusion, also irrelevant. He asserts that the SEC's failure to follow Chapter 43 harmed Plaintiff's rights because it "likely caused [the agency] to reach a conclusion different from the one it would have reached in the absence or cure of the error." ECF No. 66-1 at 11. That conclusion is an application of 5 C.F.R. § 1201.4(r), which defines "harmful error" as "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." Under 5 C.F.R. § 1201.56, in an appeal to the MSPB of an agency's decision to remove or demote an employee under Chapter 43, the agency must show that its decision was "supported by substantial evidence," 5 C.F.R. § 1201.56(b)(1)(i). However, even if the agency meets that evidentiary standard, the MSPB "is required to reverse the action of the agency" if the employee can establish, as an affirmative de-fense, "harmful error in the application of the agency's procedures in arriving at its decision" as defined in Section 1201.4(r). That is, the "harmful error" standard applies in an appeal of removal or demotion to the MSPB. It also applies in a federal court appeal of a decision of the MSPB on a claim that does not involve discrimination. *See, e.g.*, *Perry v. Dep't of Veterans Affs.*, No. 18-cv-14180, 2020 WL 6799220, at *5 (E.D. La. Nov. 19, 2020). It is not applicable here, where the issue is whether the proffered non-discriminatory reason for terminating Plaintiff—her alleged

22

unacceptable performance—was a pretext for unlawful discrimination. As discussed above, a showing that the SEC failed to follow its governing regulations in appraising and thereafter removing Plaintiff may tend, in some cases, to support an inference of pretext. But whether Plaintiff could sufficiently establish an affirmative defense available in an appeal of a termination not based on unlawful discrimination is not relevant here.[10]

Finally, "[i]t has long been the law in this Circuit that 'where the jury is just as competent to consider and weigh the evidence as is an expert witness and just as well qualified to draw the necessary conclusions therefrom, it is improper to use opinion evidence for the purpose.'" *Evans v. Wash. Metro. Area Transit Auth.*, 674 F. Supp. 2d 175, 179–80 (D.D.C. 2009) (quoting *Henkel v. Varner,* 138 F.2d 934, 935 (D.C. Cir. 1943)). Plaintiff nowhere explains why a factfinder requires an expert to explain whether the text of a performance review "indicat[es] . . . that [an employee's] performance was anything less than fully successful." ECF No. 66-1 at 11. Nor is it clear why a factfinder needs an expert to opine on whether Plaintiff's mid-year review transmittal email contained "no hint of any performance issues or deficiencies." *Id.* Those are matters of basic reading comprehension. *See, e.g.*, *Coquina Invs. v. Rothstein*, No. 10-60786-CIV, 2011 WL 4949191, at *5 (S.D. Fla. Oct. 18, 2011) ("Jurors are able to read and understand . . . documentary evidence without assistance of an expert."). "'Merely reading and interpreting documents without drawing on any additional expertise' is not helpful, and thus not admissible." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-cv-8808, 2023 WL 6248473, at *2 (N.D. Ill. Sep. 19, 2023) (citation modified) (quoting *Sullivan v. Alcatel-Lucent USA Inc.*, No. 12 C 7528, 2014 WL 3558690, at *6 (N.D. Ill. 2014))); *see also Virgin Mobile USA, L.P. v. Keen*, 447 F. Supp. 3d 1071,

---

[10] Even if it were marginally relevant, the Court would exclude it because it might well confuse the jury as to the harm that Plaintiff must establish to succeed on her claim. *See* Fed. R. Evid. 403.

1081 (D. Kan. 2020) (excluding expert testimony that merely reiterated information found on a webpage because "a juror is capable of reading and understanding a public webpage"); *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 07-cv-88, 2010 WL 1727828, at *4 n.3 (M.D. Ga. Apr. 27, 2010) (excluding expert testimony as unnecessary because "anyone who reads and understands the English language can interpret and apply the principles underlying" the text the expert relied on). Nor is it clear why a factfinder needs Kitmacher to opine on whether the fact that an employee received an award related to performance is inconsistent with a review finding her performance deficient.[11] *See* ECF No. 66-1 at 11. Again, that is a matter a layperson is well-equipped to understand and analyze.

Attempting to salvage Kitmacher's testimony on this topic—that is, whether the SEC "properly used Chapter 43 in [Plaintiff's] FY2017 performance appraisal," ECF No. 67 at 13 (some initial capitals omitted)—Plaintiff maintains that he should be permitted to address the following issues:

(1)     The 2017 Work Performance Plan contains only two so-called "critical elements:" (1) "Achieving Results in Occupation" and (2) "Teamwork and Collaboration." These are defined with non-specific and general language purporting to describe what is intended by these terms, but the definitions fail to put the employee on notice of what job responsibilities and assignments she would be required to do during the fiscal year were critical, such that failure to complete them could result in termination. Neither of these "critical elements" specifically correlated with Plaintiff's Position Description.

(2)     The Position Description, first delivered to Plaintiff on February 20, 2018, is dated February 15, 2013, and is materially inconsistent with the Position Description posted in the job announcement dated May 25, 2012, the

---

[11] The Court notes, too, that Kitmacher's assertion on that issue is inaccurate. He states that, in his 36 years of experience "in federal HR," he does not "recall an employee *receiving several prestigious awards . . .* in such close proximity timewise to a PIP and/or performance-based removal." ECF No. 66-1 at 11 (emphasis added). However, Plaintiff did not "receiv[e] several" awards. She received one award in June 2016. *See* ECF No. 72-2 at 10, 49. The team she was a part of was nominated for two awards in March 2017, but did not, apparently, receive them. *See id.* at 10–12. However, inaccuracies in an expert report generally go to the weight of the evidence, not its admissibility. *See, e.g., United State v. Sutton*, 642 F. Supp. 3d 57, 71 (D.D.C. 2022).

24

> position for which Plaintiff applied and which contains a generic description of her actual job responsibilities from her hiring in September 2012 forward.
>
> (3)     The FY 2017 appraisal by Willis, prepared with the assistance from the Office of General Counsel ("OGC"), dated February 20, 2018, contains a list of employment failures without referencing the 2017 Work Performance Plan.

*Id.* at 15–16 (internal footnote omitted).  But Kitmacher's expert report does not mention *any* of those issues.  The thrust of his opinion as to Plaintiff's performance appraisal in Section II.A of his expert report is that Willis did not comply with Chapter 43 because he failed to engage in "ongoing performance dialogue" with Plaintiff.  ECF No. 66-1 at 8, 10–11.  There is nothing about whether the "critical elements" in her 2017 Work Performance Plan provided sufficient notice of essential job responsibilities or were consistent with her job description, whether the job description provided in 2018 was consistent with the job she applied for in 2012, or whether Willis' appraisal of her performance in fiscal year 2017 referenced the 2017 Work Performance Plan. Kitmacher's opinion on Plaintiff's removal in Section II.B. of the expert report focuses on whether she was provided a "reasonable opportunity to demonstrate acceptable performance during the PIP."  *Id.* at 11–22.  Again, the topics listed above are not included.  As noted, an expert report must provide "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  Although experts are to be "permitted a certain degree of latitude with respect to the areas in which [they have] been accepted" as experts to "expand upon and explain the opinions and conclusions" in their expert reports, *Minebea Co. v. Papst*, 231 F.R.D. 3, 8 (D.D.C. 2005), they cannot simply add "claims and issues which should have been included" in their report or proffer "significantly different" opinions, *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625,

639 (D. Haw. 2008) (quoting *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003)).

For all those reasons, Kitmacher will not be permitted to testify as to the opinions included in Section II.A of his expert report or offer testimony on the newly minted topics noted above.[12]

> 2.    "SEC's Compliance with 5 U.S.C. Chapter 43, Related to its Performance-based Removal Action against Ms. Earle" (Expert Report Section II.B)

Kitmacher's summary of his opinion related to Plaintiff's PIP and subsequent removal asserts in relevant part that the PIP upon which she was placed in February 2018 did not comply with Chapter 43 and 5 C.F.R. §§ 432.103 and 432.104 because it did not allow her "a reasonable opportunity to demonstrate acceptable performance" and that, consequently, Plaintiff's "rights were harmed." ECF No. 66-1 at 11. His full opinion states that Plaintiff's PIP was unusual in his experience in that it had a "high volume" of deliverables—44 deliverables in twelve sections—to be completed in a 90-day period. *Id.* at 21. More, some of the sections "required 'perfect' performance and were absolute standards," which Kitmacher says should be avoided according to OPM and MSPB guidance, and others were "near-absolute" standards that did not "allow for a reasonable opportunity to improve" as required by the statute and regulations. *Id.* at 21–22. He bolsters his opinion that the PIP was not "reasonable" by pointing to "the alleged requirement that [Plaintiff] work non-ordered and unauthorized overtime to complete PIP-related tasks," which was "contrary to 5 U.S.C. 5541" and an alleged comment by an SEC attorney that "the likely outcome of a PIP at the SEC is termination." *Id.* at 22 (emphasis omitted). Finally, he asserts that the "SEC's action failed the substantial evidence test, as defined by 5 CFR 1201.4(p), as a reasonable person,

---

[12] A declaration from Plaintiff's counsel asserts that Kitmacher would testify about an additional topic included nowhere in the expert report—or even in Plaintiff's brief: "statements that Defendants' witnesses made about evaluating Plaintiff as a *de facto* manager although she was not a manager and her position description did not identify her as a manager." ECF No. 67-1, ¶ 6. That opinion, too, is off limits.

considering the record as a whole, including the PIP, would not accept this as adequate to support [Plaintiff's] removal" and that the agency's "removal action" was a "harmful error[] that harmed [her] rights." *Id.*

Some of those opinions are inadmissible for the reasons stated above in Section III.C.1—specifically, Kitmacher's assertions that the agency failed to comply with statutes or regulations, including not only his opinions that the agency violated Chapter 43 and 5 U.S.C. §§ 432.103 & 432.104, but also his opinions that there was not "substantial evidence" to support the SEC's decision to remove Plaintiff, that her removal was "harmful error," and that the PIP violated "5 U.S.C. 5541." Again, his opinions as to the SEC's alleged violations of Chapter 43 and its regulations and "5 U.S.C. 5541"—are inadmissible legal conclusions.[13] His opinion regarding substantial evidence and harmful error are not only legal conclusions, but also irrelevant for the reasons discussed in Section III.C.1. His opinion that "a reasonable person, considering the record as a whole, including the PIP, would not accept this as adequate to support [Plaintiff's] removal" is further excluded because expert testimony as to that issue is unnecessary. Jurors "regularly determine what constitutes the conduct of a 'reasonable person'[] by bringing their own common sense and life experience to bear." *Hammond v. Lyndon S. Ins. Co.*, No. 19-cv-245, 2020 WL 13881248, at *3 (W.D. Okla. Sep. 30, 2020) (quoting *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 939 (10th Cir. 1994)); *see also Kreidler v. Pixler*, No. 06-cv-697, 2010 WL 1507888, at *2 (W.D. Wash. Apr. 14, 2010) ("[A] jury can make its own determination regarding what a reasonable person might do.").

---

[13] The Court notes that his opinion that the PIP violated "5 U.S.C. 5541" because it required Plaintiff to work overtime also appears to be inaccurate. Section 5541 of Title 5 defines several terms but does not mention anything about "overtime." *See* 5 U.S.C. § 5541 (defining the terms "agency," "employee," and "law enforcement officer").

Opinions based on expertise that do not spout legal conclusions or usurp jury functions, however, are admissible.  For example, in *Crowley*, the court allowed testimony from a human resources professional that a PIP contained "unreasonable expectations," finding it relevant to the question of pretext and admissible to the extent the expert did "not offer the ultimate opinion testimony that the PIP didn't comply with the requirements of the Code of Federal Regulations." 318 F. Supp. 3d at 293.  Kitmacher offers similar opinions here, namely that Plaintiff's PIP was unusually onerous because of the number of tasks, the absolute or near-absolute standards, and the consequent difficulty in demonstrating satisfactory performance.  Accordingly, the Court will not preclude Kitmacher from offering those opinions.[14]

       3.     "SEC's History and Approach Related to [Personnel Management]" (Expert Report Section II.C)

Kitmacher opines that, "according to [the Government Accountability Office] and [the] SEC's [Office of the Inspector General]," the agency "has a continuing history of problems in administering its personnel management program." ECF No. 66-1 at 22.  He further asserts that he "cannot determine if the SEC's [personnel management] program shortcomings . . . negatively impacted" Plaintiff, but he finds the "overall picture" to be "concerning." *Id.* at 25.  He also states that, in his experience, it is unusual for an agency to involve, as the SEC apparently did here, attorneys in employee relations matters "at the front end." *Id.*  To reach these conclusions, he primarily reviewed two reports from the Government Accountability Office (from July 2013 and December 2016) and two reports from the SEC's Office of the Inspector General (from October

---

[14] The section of Plaintiff's opposition headed "Mr. Kitmacher Can Address Defendant's Claim that it Properly Used Chapter 43 in the 2018 PIP Performance Appraisal" suggests that, because there are documents in the record citing the provisions of Chapter 43, *any* opinions he might generate as to that topic are admissible. *See* ECF No. 67 at 16–17 (asserting that Kitmacher can address whether the SEC violated Chapter 43 in appraising Plaintiff's performance under the PIP and, as support, listing documents in the record citing or relying on the procedures of Chapter 43 connected with Plaintiff's removal).  The argument (such as it is) fails to engage with Federal Rule of Evidence 702 or Federal Rule of Civil Procedure 26(a)(2)(B).  It is therefore rejected.

2017 and September 2018) discussing the SEC's personnel management difficulties. *See id.* at 22–25.

Defendant argues that Kitmacher's opinions on this topic have "nothing to do with [Plaintiff] at all" and are "entirely irrelevant" to the issue remaining in this case, that is, whether Plaintiff's "termination constituted discrimination and/or retaliation." ECF No. 66 at 7. The SEC's reply brief notes, accurately, that Plaintiff does not address those arguments in her opposition. *See* ECF No. 69 at 1. The Court therefore treats the government's argument as conceded and excludes any testimony related to the opinions expressed in section II.C of the expert report. *See, e.g. Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) (affirming the district court's application of the precept that "if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded"); *Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995, at *20 (D.D.C. Oct. 27, 2022) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation modified) (quoting *Nwachuku v. Jackson*, 605 F. Supp. 2d 285, 286 n. 1 (D.D.C. 2009), *aff'd*, No. 22-5310, 2024 WL 3219489 (D.C. Cir. June 28, 2024))).

The undersigned notes, too, that the bulk of the opinions are inadmissible because they are not helpful. Kitmacher merely read four reports about issues the SEC has had administering its personnel management program, at different times, and concluded that the SEC has had issues administering its personnel management program. A factfinder can do that without help from an expert. *See, e.g.*, *Kraft Foods Glob.*, 2023 WL 6248473, at *2; *Virgin Mobile USA*, 447 F. Supp. 3d at 1081; *Coquina Invs.*, 2011 WL 4949191, at *5; *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 1727828, at *4 n.3.

29

4. "Any Applicable [Prohibited Personnel Practices]" (Expert Report Section II.D)

Kitmacher summarizes his opinion on this topic as follows:

[The] SEC's Chapter 43 removal of Ms. Earle may have been influenced by its planned realignment, which would have required Chapter 351 restructuring procedures. Further, it appears Ms. Earle may have experienced the discrimination she alleged, based on her gender, religion, and age, and that she may have been retaliated against for her protected activities.

ECF No. 66-1 at 26. He further expounds on the alleged scheme to repurpose vacant positions to create new management positions, which began a year before the institution of Plaintiff's PIP, finding "the timing" of the PIP to be "of concern," repeating the assertions from Section II.A of the expert report that he had seen "no evidence" that Willis "communicated performance concerns to [Plaintiff] during the rating period" and that the "SEC's Chapter 43 action against [Plaintiff] is undercut by the awards" she received and "the nature of her PIP." *Id.* at 30. Looking at "the totality of the circumstances," he opines that "a reasonable person may conclude that [Plaintiff's] Chapter 43 PIP and removal may have been influenced" by the SEC's planned realignment and that, "[i]f restructuring was the goal," the agency "needed to follow Chapter 351 RIF[15] and not Chapter 43 performance procedures and doing otherwise (if the case) may have been" a prohibited personnel practice. *Id.*

Plaintiff must show the relevance of expert testimony by a preponderance of the evidence. *See McGill*, 815 F.3d at 903 ("The proponent of the expert testimony bears the burden to establish the admissibility of the testimony and the qualifications of the expert."). She has not even attempted to show that the SEC's hypothesized failure to comply with regulations governing

---

[15] "Chapter 351 RIF" apparently refers to Part 351 of Title 5 of the Code of Federal Regulations, entitled "Reduction in Force." Kitmacher cites 5 C.F.R. 351.204, which states, "Each agency covered by this part is responsible for following and applying the regulations in this part when the agency determines that a reduction force is necessary." ECF No. 66-1 at 27 (quoting 5 C.F.R. § 351.204).

reductions in force when attempting to reorganize the department is relevant to whether the non-discriminatory reason the agency has advanced to support its decision to terminate her is pre-textual.

Kitmacher's second opinion—that Plaintiff "may have experienced the discrimination she alleged, based on her gender, religion, and age, and that she may have been retaliated against for her protected activities," is supported by the following discussion:

> As noted by the law firm, [16] [Plaintiff] was the only female SK-16 in her work unit, with the other three SK-16s being male.  She was the only Jewish SK-16 employee in her unit.  She was also over the age of 40.  According to the law firm, none of the male SK-16s were impacted by the realignment, none were placed on PIPs, nor did they lose their jobs. . . . [A]s [union] official Barry relayed, in his January 17, 2018 email to [Plaintiff] and others, to which SEC Attorney Rossiter was Ccd on the string of emails, it appears SEC management was aware of her retirement eligibility.
>
> Also as noted by the law firm, [Plaintiff's] work unit, the [front office] which apparently experienced a significant reduction in the number of female employees, and the realignment were all under the same management chain. Further, [Plaintiff's] timely allegations of gender, religion and age discrimination, retaliation for her protected activity, and being a whistleblower, were subsequent to her May 2, 2018 document to the SEC Commissioners "Report on Illegal Employment Practices and Corruption."
>
> Again, given the totality of the circumstances, it appears that [Plaintiff] may have experienced the discrimination and retaliation she alleged.

ECF No. 66-1 at 30.  In light of the discussion in Section III.C.1, *supra*, testimony related to this opinion will be excluded.  To repeat, "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact." *Burkhart*, 112 F.3d at 1212.  Indeed, "[d]istrict courts routinely exclude expert testimony that purports to apply the law to the facts of the case," *Magallon*, 743 F. Supp. 3d at 1249; and courts have found that reviewing evidence and reaching "conclusions after

---

[16] "[T]he law firm" Kitmacher repeatedly refers to is apparently the firm representing Plaintiff in this action.  That is, Kitmacher bases these opinions on information provided to him by Plaintiff's attorneys.

applying the law" does not constitute an appropriate expert methodology, *Richter*, 185 F. Supp. 3d at 1279.

## IV.    CONCLUSION

It can be a delicate operation to disentangle expert testimony that appropriately helps the factfinder understand the evidence from expert testimony that consists of inadmissible legal conclusions.  Here, however, much of the testimony Plaintiff proffers effectively tells the jury what its decision should be on an argument she has made central to her case—that the SEC failed to comply with governing regulations in its machinations to fire her, which she contends is evidence that her performance was not deficient and the real reason she was removed was illegal discrimination or retaliation.  Courts have found similar testimony to be inadmissible.  And when the method used to reach those conclusions merely mimics the jury's own process—reviewing the factual record and applying the law—it not difficult to conclude that the testimony impinges on the province of the jury to find the facts and of the court to instruct on the law.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Exclude the Testimony of Ira W. Kitmacher, ECF No. 66, is **GRANTED IN PART AND DENIED IN PART** as explained above.

**SO ORDERED**.

Date:  May 8, 2026

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

32